217 P.3d 756 (2009)
STATE of Washington, Petitioner,
v.
Ryan J. O'HARA, Respondent.
No. 81062-1.
Supreme Court of Washington, En Banc.
Argued January 15, 2009.
Decided October 1, 2009.
*759 Andrew J. Metts, III, Spokane County Prosecutor's Office, Spokane, WA, for Petitioner.
Jordan Broome McCabe, Attorney at Law, Bellevue, WA, for Respondent.
FAIRHURST, J.
¶ 1 Under RAP 2.5(a), appellate courts may refuse to hear any claim of error not raised at trial. Even if not raised at the trial court, a party on appeal may raise claims of "manifest error affecting a constitutional right." RAP 2.5(a). Ryan J. O'Hara did not object to the self-defense jury instruction provided at his trial on a charge of second degree assault. The Court of Appeals held the trial court's failure to provide a complete jury instruction on the definition of "malice" constituted a manifest error affecting a constitutional right and reversed O'Hara's conviction. Because the jury instruction does not constitute a manifest error affecting a constitutional right, we reverse.

I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY
¶ 2 On January 3, 2006, while spending the night at a friend's house, Jeffrey Loree intervened in an argument between Tina Gumm and O'Hara over the keys to O'Hara's car. At some point, Loree gained possession of the keys. Loree then walked outside with O'Hara to the car in an effort to retrieve several of Gumm's items left in the car trunk. As Loree put the key in the lock, O'Hara struck Loree on the head with a "Mag" flashlight. Verbatim Report of Proceedings at 46. Loree proceeded to chase O'Hara, first with a rock and later, a lumber board. After Loree put the rock down, O'Hara approached Loree and again struck him on the head with the flashlight. Later, when Loree fell while chasing O'Hara with a board, O'Hara hit Loree on the head four or five times with the flashlight.
¶ 3 The State charged O'Hara with third degree assault. It later amended the information to charge second degree assault.
¶ 4 At trial, O'Hara argued he acted in self-defense. O'Hara testified that, while walking from the house to the car, he repeatedly asked Loree for the keys to the car. He also testified that, at one point, he reached for the keys and Loree punched him in the forehead. O'Hara claimed he hit Loree only once with the flashlight and did not hit Loree when Loree chased him.
¶ 5 At O'Hara's request, the trial court provided the following jury instruction:
Instruction No. 11
It is a defense to a charge of Second Degree Assault that the force used was lawful as defined in this instruction.
The use of force upon or toward the person of another is lawful when used by a person who reasonably believes that he is about to be injured and/or in preventing or attempting to prevent an offense against the person or a malicious trespass or other malicious interference with real or personal property lawfully in that person's possession, and when the force is not more than is necessary.
The person using the force may employ such force and means as a reasonably prudent person would use under the same or similar conditions as they appeared to the person, taking into consideration all of the facts and circumstances known to the person at the time of and prior to the incident.
The State has the burden of proving beyond a reasonable doubt that the force used by the defendant was not lawful. If you find that the State has not proved the absence of this defense beyond a reasonable doubt, it will be your duty to return a verdict of not guilty.
Clerk's Papers (CP) at 35.
¶ 6 Without O'Hara's request or objection, the trial court sua sponte instructed the jury as to the meaning of "malice" used in the self-defense instruction:
Instruction No. 10
Malice and maliciously mean an evil intent, wish, or design to vex, annoy or injure another person.
CP at 34. In instruction 4, the court also instructed the jury:
Evidence may be either direct or circumstantial. Direct evidence is that given *760 by a witness who testifies concerning facts that he or she has directly observed or perceived through the senses. Circumstantial evidence is evidence of facts or circumstances from which the existence or nonexistence of other facts may be reasonably inferred from common experience. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. One is not necessarily more or less valuable than the other.
CP at 28.
¶ 17 The jury convicted O'Hara of second degree assault.
¶ 8 On appeal, O'Hara challenged his conviction on the ground the trial court's instruction 10 provided an incomplete definition of "malice." He contended the trial court failed to include the rest of the definition of "`[m]alice'" in RCW 9A.04.110(12) that provides "[m]alice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty."
¶ 9 Reasoning that the omission in the jury instruction was a manifest error affecting a constitutional right that O'Hara, under RAP 2.5(a), could raise for the first time on appeal, the Court of Appeals reversed O'Hara's conviction. State v. O'Hara, 141 Wash.App. 900, 174 P.3d 114 (2007). We granted the State's petition for review on the jury instruction issue only. State v. O'Hara, 164 Wash.2d 1002, 190 P.3d 55 (2008).

II. ISSUES
A. Are allegedly erroneous self-defense jury instructions automatically constitutional in nature and presumed prejudicial?
B. Does the trial court's failure to include the entire statutory definition of "malice" in its jury instruction qualify under the manifest constitutional error exception to the requirement that a party preserve its claim at trial?

III. ANALYSIS
¶ 10 It has long been the law in Washington that an "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a); State v. Lyskoski, 47 Wash.2d 102, 108, 287 P.2d 114 (1955). The underlying policy of the rule is to "encourag[e] the efficient use of judicial resources. The appellate courts will not sanction a party's failure to point out at trial an error which the trial court, if given the opportunity, might have been able to correct to avoid an appeal and a consequent new trial." State v. Scott, 110 Wash.2d 682, 685, 757 P.2d 492 (1988). The rule comes from the principle that trial counsel and the defendant are obligated to seek a remedy to errors as they occur, or shortly thereafter. See City of Seattle v. Harclaon, 56 Wash.2d 596, 597, 354 P.2d 928 (1960).
¶ 11 The general rule that an assignment of error be preserved includes an exception when the claimed error is a "manifest error affecting a constitutional right." RAP 2.5(a). This exception encompasses developing case law while ensuring only certain constitutional questions can be raised for the first time on review. RAP 2.5 cmt. (a) at 86 Wash.2d 1152 (1976).
¶ 12 To meet RAP 2.5(a) and raise an error for the first time on appeal, an appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension. State v. Kirkman, 159 Wash.2d 918, 926, 155 P.3d 125 (2007) (citing State v. WWJ Corp., 138 Wash.2d 595, 602, 980 P.2d 1257 (1999); Scott, 110 Wash.2d at 688, 757 P.2d 492). Stated another way, the appellant must "identify a constitutional error and show how the alleged error actually affected the [appellant]'s rights at trial." Id. at 926-27, 155 P.3d 125. If a court determines the claim raises a manifest constitutional error, it may still be subject to a harmless error analysis. State v. McFarland, 127 Wash.2d 322, 333, 899 P.2d 1251 (1995); State v. Lynn, 67 Wash.App. 339, 345, 835 P.2d 251 (1992).
¶ 13 In analyzing the asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude. *761 Scott, 110 Wash.2d at 687, 757 P.2d 492. We look to the asserted claim and assess whether, if correct, it implicates a constitutional interest as compared to another form of trial error. See id. at 689-91, 757 P.2d 492. In instances where the allegation is that the defendant's due process rights were violated because he or she was denied a fair trial, the court will look at the defendant's allegation of a constitutional violation, and the facts alleged by the defendant, to determine whether, if true, the defendant's constitutional right to a fair trial has been violated. See id. (holding because nothing in the constitution requires the meaning of particular terms in a jury instruction to be specifically defined, the defendant's unpreserved claim regarding the jury instructions did not constitute constitutional error and, thus, was not properly preserved for appellate review).
¶ 14 After determining the error is of constitutional magnitude, the appellate court must determine whether the error was manifest. "'Manifest' in RAP 2.5(a)(3) requires a showing of actual prejudice." Kirkman, 159 Wash.2d at 935, 155 P.3d 125 (citing State v. Walsh, 143 Wash.2d 1, 8, 17 P.3d 591 (2001); McFarland, 127 Wash.2d at 333-34, 899 P.2d 1251). To demonstrate actual prejudice, there must be a "`plausible showing by the [appellant] that the asserted error had practical and identifiable consequences in the trial of the case.'" Kirkman, 159 Wash.2d at 935, 155 P.3d 125 (internal quotation marks omitted) (quoting WWJ Corp., 138 Wash.2d at 603, 980 P.2d 1257). In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim. Id. at 935, 980 P.2d 1257 (citing WWJ Corp., 138 Wash.2d at 602, 980 P.2d 1257; McFarland, 127 Wash.2d at 333, 899 P.2d 1251 (citing State v. Riley, 121 Wash.2d 22, 31, 846 P.2d 1365 (1993))). "If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice is shown and the error is not manifest." McFarland, 127 Wash.2d at 333, 899 P.2d 1251.
¶ 15 As noted in both McFarland and Scott, a harmless error analysis occurs after the court determines the error is a manifest constitutional error. Id.; Scott, 110 Wash.2d at 688, 757 P.2d 492. The determination of whether there is actual prejudice is a different question and involves a different analysis as compared to the determination of whether the error warrants a reversal. In order to ensure the actual prejudice and harmless error analyses are separate, the focus of the actual prejudice must be on whether the error is so obvious on the record that the error warrants appellate review.[1]See Harclaon, 56 Wash.2d at 597, 354 P.2d 928; McFarland, 127 Wash.2d at 333, 899 P.2d 1251. It is not the role of an appellate court on direct appeal to address claims where the trial court could not have foreseen the potential error or where the prosecutor or trial counsel could have been justified in their actions or failure to object. Thus, to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.

A. An unpreserved erroneous self-defense jury instruction must be analyzed on a case-by-case basis to determine whether it was a manifest error affecting a constitutional right
¶ 16 Having identified the manifest constitutional error test, it is next necessary to examine how to apply the manifest constitutional error exception to an alleged incomplete self-defense jury instruction.[2] *762 Generally, unpreserved claims of error involving jury instructions are subject to an analysis of whether the error is manifest constitutional error. See Scott, 110 Wash.2d 682, 757 P.2d 492; State v. Salas, 127 Wash.2d 173, 181-83, 897 P.2d 1246 (1995). Jury instructional errors that we have held constituted manifest constitutional error include: directing a verdict, State v. Peterson, 73 Wash.2d 303, 306, 438 P.2d 183 (1968); shifting the burden of proof to the defendant, State v. McCullum, 98 Wash.2d 484, 487-88, 656 P.2d 1064 (1983); failing to define the "beyond a reasonable doubt" standard, State v. McHenry, 88 Wash.2d 211, 214, 558 P.2d 188 (1977); failing to require a unanimous verdict, State v. Carothers, 84 Wash.2d 256, 262, 525 P.2d 731 (1974); and omitting an element of the crime charged, State v. Johnson, 100 Wash.2d 607, 623, 674 P.2d 145 (1983), overruled on other grounds by State v. Bergeron, 105 Wash.2d 1, 711 P.2d 1000 (1985). In contrast, instructional errors not falling within the scope of RAP 2.5(a), that isnot constituting manifest constitutional errorinclude the failure to instruct on a lesser included offense, State v. Kwan Fai Mak, 105 Wash.2d 692, 745-49, 718 P.2d 407 (1986); and the failure to define individual terms, Scott, 110 Wash.2d at 690-91, 757 P.2d 492.
¶ 17 In the context of self-defense jury instructions, however, we provided a more universal statement. In State v. LeFaber, 128 Wash.2d 896, 900, 913 P.2d 369 (1996), without explanation, we stated, "A jury instruction misstating the law of self-defense amounts to an error of constitutional magnitude and is presumed prejudicial." Since LeFaber, while this court has not used this statement to review an unpreserved erroneous self-defense jury instruction, the Court of Appeals has used this statement in several cases to address those types of claims. See State v. Birnel, 89 Wash.App. 459, 470, 473, 949 P.2d 433 (1998); State v. Cowen, 87 Wash.App. 45, 50-51, 939 P.2d 1249 (1997). Examining the cases cited by LeFaber and the underlying logic for the blanket rule, we hold LeFaber's per se rule is no longer justified and appellate courts should determine on a case-by-case basis whether an unpreserved claim of error regarding a self-defense jury instruction constitutes a manifest constitutional error.
¶ 18 In stating erroneous self-defense jury instructions are constitutional and presumed prejudicial, the LeFaber court relied upon two cases: McCullum, 98 Wash.2d 484, 656 P.2d 1064 and State v. Wanrow, 88 Wash.2d 221, 237, 559 P.2d 548 (1977). It appears this court believed that McCullum stood for the proposition that erroneous self-defense jury instructions are automatically of constitutional magnitude and that Wanrow held the error was presumptively prejudicial. LeFaber, 128 Wash.2d at 900, 913 P.2d 369. Those characterizations are inaccurate.
¶ 19 In McCullum, this court reviewed an unpreserved claim that the self-defense instruction provided improperly placed the burden of proof on the defendant. 98 Wash.2d at 496, 656 P.2d 1064. In determining the error was a "manifest error affecting a constitutional right," this court held the defendant raised a constitutional due process claim that must be addressed even absent an objection because the jury instruction relieved the State of its burden of disproving the self-defense in a murder prosecution. Id. at 488, 656 P.2d 1064. The court then proceeded to hold it was error to provide a self-defense instruction that placed the burden of proof upon the defendant. Id. at 496-97, 656 P.2d 1064.[3] Since McCullum ultimately struck down the instruction as improperly shifting the burden to the defendant, that particular self-defense instruction is no longer permissible. The justification for reviewing the jury instruction in McCullum thus does not automatically apply to the current self-defense jury instruction. As a result, the LeFaber court imprecisely stated a self-defense jury instruction was automatically of a constitutional magnitude without further *763 analyzing whether the instruction shifted the burden or whether some other constitutional interest was at stake.
¶ 20 In Wanrow, this court held when there is error in a self-defense jury instruction requested by the prosecution, the error is presumed to have been prejudicial. 88 Wash.2d at 235-37, 559 P.2d 548. As the claim of error in Wanrow appears to have been preserved, its holding was not in the context of determining whether a claim of error regarding a self-defense jury instruction overcame the preservation requirements. Its focus was limited to determine what presumptions exist in a harmless error analysis of a self-defense instruction antagonistic to the defendant's interests. Thus, under Wanrow, situations could exist where a defendant or the trial court propose an erroneous jury instruction and the instruction is not presumptively prejudicial. Again, the statement in LeFaber oversimplifies a more nuanced area of the law.
¶ 21 Additionally, there is nothing in the case law suggesting an erroneous self-defense jury instruction is akin to other types of erroneous jury instructions that we have deemed automatically of a constitutional magnitude. As noted above, the examples of manifest constitutional errors in jury instructions include: directing a verdict, shifting the burden of proof to the defendant, failing to define the "beyond a reasonable doubt" standard, failing to require a unanimous verdict, and omitting an element of the crime charged. On their face, each of these instructional errors obviously affect a defendant's constitutional rights by violating an explicit constitutional provision or denying the defendant a fair trial through a complete verdict. In contrast, instructional errors not falling within the scope of RAP 2.5(a), that isnot constituting manifest constitutional error-include the failure to instruct on a lesser included offense and failure to define individual terms. In each of those instances, one can imagine justifications for defense counsel's failure to object or where the jury could still come to the correct conclusion. Looking at those prior cases, there is nothing about erroneous self-defense jury instructions, in whatever form, automatically putting them in the group of cases where we reviewed the error as compared to the group where we did not.
¶ 22 In addition to not having precedential support, the statement in LeFaber has since created a logically problematic situation for appellate courts. Given other jury instruction errors are not automatically of a constitutional magnitude or presumptively prejudicial, the trial court could provide an erroneous instruction on the definition of an element of a crime and not have the error reviewed by an appellate court because it is not of a constitutional magnitude or actually prejudicial. See Scott, 110 Wash.2d at 691-92, 757 P.2d 492 (holding an incomplete instruction of the definition of "knowledge" in an instruction on accomplice liability for burglary did not amount to a manifest error affecting a constitutional right). On the other hand, pursuant to LeFaber, appellate courts can review any unpreserved error in a trial court's self-defense jury instruction, regardless of the type of claim or prejudice occurring at trial. Using the current uniform instructions, LeFaber's statement is unnecessarily broad in its scope such that it creates an unfair benefit to defendants who have any error in their self-defense instructions. To be logically consistent, we hold appellate courts should analyze unpreserved claims of error involving self-defense instructions on a case-by-case basis to assess whether the claimed error is manifest constitutional error.

B. The failure of the trial court to include the entire statutory definition of "malice" does not amount to a manifest error affecting a constitutional right
¶ 23 We now turn to whether O'Hara's claim of error amounts to a manifest constitutional error. The self-defense instruction allowed the jury to acquit O'Hara if it found he reasonably used force in response to a reasonable belief that Loree was maliciously trespassing or maliciously interfering with O'Hara's personal property. The trial court used the first sentence in RCW *764 9A.04.110(12)[4] as its definition of "malice" but left out the rest of the statutory definition. At issue is whether the trial court's instruction on malice constitutes a manifest constitutional error. We hold it does not.
¶ 24 Using the test outlined above, the trial court's failure to provide the full statutory definition of "malice" in its jury instruction does not constitute an error of constitutional dimension. O'Hara does not point to an explicit constitutional provision. O'Hara instead argues the instruction generally violates his due process rights because it relieved the State of its burden to prove beyond a reasonable doubt an element of the crime.
¶ 25 Due process requires a criminal defendant be convicted only when every element of the charged crime is proved beyond a reasonable doubt. U.S. CONST. amend. XIV; see WASH. CONST. art I, § 22; Jackson v. Virginia, 443 U.S. 307, 311, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); In re Winship, 397 U.S. 358, 365-66, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case. State v. Mills, 154 Wash.2d 1, 7, 109 P.3d 415 (2005). However, the "constitution only requires the jury be instructed as to each element of the offense charged, and the failure of the trial court to further define one of those elements is not within the ambit of the constitutional rule." State v. Fowler, 114 Wash.2d 59, 69-70, 785 P.2d 808 (1990) (citing Scott, 110 Wash.2d at 689, 757 P.2d 492), overruled on other grounds by State v. Blair, 117 Wash.2d 479, 816 P.2d 718 (1991). This requirement also applies to a self-defense jury instruction, to the extent that the instruction creates an additional fact the State must disprove beyond a reasonable doubt. See LeFaber, 128 Wash.2d at 898, 913 P.2d 369; McCullum, 98 Wash.2d at 488, 656 P.2d 1064; State v. Acosta, 101 Wash.2d 612, 622, 683 P.2d 1069 (1984) (stating "the test is whether the jury was informed, or could understand from the instructions as a whole, that the State bears the burden of proof"). Thus, to determine whether the malice instruction was an error of constitutional magnitude, we must examine whether the instruction omitted an element so as to relieve the State of its burden or merely failed to further define one of those elements.
¶ 26 Examining the case law and the instruction given, the failure of the trial court to provide the complete statutory definition of "malice" was, at most, a failure to further define one of the elements. In State v. Ng, 110 Wash.2d 32, 44-45, 750 P.2d 632 (1988), this court declined to review an unpreserved claim that the trial court erred when it failed to define "theft" in its robbery instructions. We reasoned the term "theft" was of sufficient common understanding to allow the jury to convict of robbery. Id.
¶ 27 While Ng did not address the manifest constitutional error exception, our decision in Scott expands upon Ng to provide further insight on when an instruction constitutes constitutional error. Scott, 110 Wash.2d 682, 757 P.2d 492. In Scott, the trial court provided an accomplice liability instruction requiring the jury to find the defendant acted "with knowledge." Id. at 683 n. 1, 757 P.2d 492. Absent an objection, the trial court did not further define the term "knowledge." Id. This court held any error would not be constitutional in magnitude. Id. at 689-91, 757 P.2d 492. Rejecting a rule that courts are constitutionally obligated to define technical terms, we reasoned the trial court had instructed the jury on all of the elementsit just failed to further define an element. Id. In rejecting the rule that courts are constitutionally required to define technical terms, the court distinguished Scott from State v. Allen, 101 Wash.2d 355, 678 P.2d 798 (1984), where we held the trial court erred in failing to define the mens rea element of intent. Id. at 684, 689-90, 678 P.2d 798. Noting the *765 defendant in Allen had preserved his claim for appellate review, we held the failure to define a technical term in an instruction is not automatically constitutional error that may be raised for the first time on appeal. Id. at 689-90, 678 P.2d 798.
¶ 28 Here, the trial court correctly instructed the jury that O'Hara's actions were justified if he was acting in self-defense of his person or his property. In particular, the court instructed the jury that if O'Hara reasonably believed Loree was maliciously trespassing or maliciously interfering with O'Hara's property, he was justified in using reasonable force. The trial court even instructed the jury as to the definition of "malice." Given the jury instruction provided, the State was not relieved of its burden to disprove O'Hara acted in self-defense. According to instruction 11, the State still needed to prove beyond a reasonable doubt that O'Hara did not reasonably believe Loree was maliciously trespassing or maliciously interfering with real or personal property. Although the trial court did not provide the entire statutory definition of "malice," no instruction precluded the jury from finding malice by "infer[ing] from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty." RCW 9A.04.110(12).
¶ 29 If anything, the trial court's instruction 4 informed the jury that it could use circumstantial evidence, which is "evidence of facts or circumstances from which the existence or nonexistence of other facts may be reasonably inferred from common experience." CP at 28. Therefore, the jury was instructed it could find malice by inferring from common experience. To the extent the trial court erred in providing an instruction on the definition, the error would only be an error in defining a technical term and not an error of a constitutional magnitude. As the jury was instructed on all elements of the crime, the omission of the full statutory definition of "malice" does not constitute error of a constitutional magnitude.
¶ 30 The Court of Appeals relied upon our reasoning in LeFaber to hold the trial court committed constitutional error. O'Hara, 141 Wash.App. at 907, 174 P.3d 114. LeFaber, however, does not aid us here. In LeFaber, the trial court provided a self-defense jury instruction that was ambiguous as to whether the State had to disprove the defendant reasonably believed there was imminent danger of harm or that there was actually imminent danger of harm. 128 Wash.2d at 899, 913 P.2d 369. Although unpreserved, we reviewed the claim of error and reversed, reasoning the instruction was misleading so as to deprive the defendant of his ability to argue his theory of the case. Id. at 903, 913 P.2d 369.
¶ 31 In contrast to this case, the LeFaber court dealt with an ambiguity regarding an elemental component of the self-defense instruction. Examining the instruction at issue in LeFaber, the instruction effectively relieved the State of its burden of proving the defendant had a reasonable belief he was in imminent danger of harm. In this case, however, the State was not relieved of its burden of proving the elements of the crime and disproving O'Hara acted in self-defense. The alleged omission did not allow the jury to find O'Hara guilty without finding O'Hara did not act upon a reasonable belief that Loree maliciously trespassed or maliciously interfered with real or personal property. Any error would not be of constitutional magnitude.
¶ 32 In addition to not being constitutional error, the trial court's failure to include the entire statutory definition of "malice" does not amount to manifest error. As noted above, to be manifest, the error must have practical and identifiable consequences apparent on the record that should have been reasonably obvious to the trial court. See Kirkman, 159 Wash.2d at 935, 155 P.3d 125.
¶ 33 Here, the trial court's failure to provide the full statutory definition does not constitute manifest error because the omission did not create practical and identifiable consequences during the trial that should have been obvious to the trial court. The challenged instruction, as noted above, does not relieve the State of its obligation to prove the elements of the crime and disprove *766 O'Hara acted in self-defense.[5] Also, the instruction still allowed the jury to determine whether O'Hara reasonably believed Loree was maliciously trespassing or maliciously interfering with his real or personal property. As the jury could make all of those findings under the instructions given, there is no practical or identifiable consequence in the record for the trial court's failure to provide the full statutory definition of "malice."
¶ 34 Moreover, it would not have been obvious to the trial court that the omission in the instruction constituted error. The trial court provided an instruction allowing the jury to use circumstantial evidence, thus making the omitted portion of the instruction duplicative of what was already stated. The trial court's jury instruction was not manifest error.
¶ 35 The error alleged by O'Hara was not of a constitutional magnitude or manifest. O'Hara therefore failed to satisfy the manifest constitutional error exception in RAP 2.5(a). As O'Hara's claim of error is unpreserved and does not meet RAP 2.5(a), it was not necessary for the Court of Appeals to review the claim.

IV. CONCLUSION
¶ 36 We hold O'Hara has not demonstrated his claim of error is of a constitutional dimension or manifest. Because the claim was not properly preserved below and the exception in RAP 2.5(a) does not apply, the Court of Appeals erred when it reviewed O'Hara's claim of error. Accordingly, the decision of the Court of Appeals is reversed.
WE CONCUR: ALEXANDER, C.J., C. JOHNSON, CHAMBERS, OWENS, J. JOHNSON, JJ., and SEINFELD, J.P.T.
MADSEN, J., concurring in result only.
SANDERS, J. (dissenting).
¶ 37 Although the majority persuasively argues the determination of whether a claimed error in a self-defense instruction is a "manifest error affecting a constitutional right," RAP 2.5(a), must be answered on a case by case basis; I find myself in agreement with the Court of Appeals that this instructional error is indeed a "manifest error affecting a constitutional right" under these particular facts. State v. O'Hara, 141 Wash.App. 900, 174 P.3d 114 (2007), review granted, 164 Wash.2d 1002, 190 P.3d 55 (2008).
¶ 38 Ryan J. O'Hara was charged with one count of second degree assault because he hit Jeffrey Loree on the head with a "Mag light" flashlight. O'Hara's defense was not that he did not strike Loree as alleged but rather that the use of this force was justified because Loree refused to return Mr. O'Hara's car key and then attempted to open O'Hara's trunk over his protestations. O'Hara relied upon that portion of the self-defense instruction, Instruction No. 11, which says it is lawful to use force in "preventing or attempting to prevent ... a malicious trespass or other malicious interference with ... personal property lawfully in that person's possession...." Clerk's Papers (CP) at 35.
¶ 39 As pointed out by the majority, however, the problem arises from the court's sua sponte[1] instruction 10, which defines malice:
Malice and maliciously mean an evil intent, wish, or design to vex, annoy or injure another person.
CP at 34.
¶ 40 In the context of this case giving this narrow definition is tantamount to conviction since it was undisputed that Loree retained the key to open O'Hara's trunk so as to return the personal property located therein to Tina Gummhardly, by any stretch of the *767 imagination "an evil intent, wish, or design to vex, annoy or injure another person." On the face of it, Mr. Loree was acting as a good Samaritan in aid of a woman in distress. So instructed, the jury would obviously reject self-defensewhich it did. "Instructions are sufficient if they are supported by substantial evidence, allow the parties to argue their theories of the case, and when read as a whole properly inform the jury of the applicable law." State v. Hutchinson, 135 Wash.2d 863, 885, 959 P.2d 1061 (1998). That is not the case here.
¶ 41 Although the court also gave instruction 4 (CP at 28), which allows the jury to consider not only direct but circumstantial evidence, that does nothing to mitigate the problem because there was simply no direct or circumstantial evidence of "evil intent" which the trial court required the jury to find as a prerequisite to acquittal on self-defense grounds.
¶ 42 Malice is a term of art[2] defined by statute in a nuanced manner not commonly understood.
"Malice" and "maliciously" shall import an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty.

RCW 9A.04.110(12) (emphasis added).
¶ 43 By giving only the first sentence of the statutory definition in instruction 10, the trial court did more harm to O'Hara's defense than giving no definition at all because it failed to inform the jury that Mr. O'Hara's use of force was lawful if the jury found that (a) Mr. Loree willfully disregarded Mr. O'Hara's right not to have his property invaded and (b) use of the flashlight was a reasonable degree of force to prevent that violation"evil intent" or not.
¶ 44 A jury instruction that fails to make the law of self-defense "manifestly clear" unconstitutionally denies the defendant a fair trial. State v. LeFaber, 128 Wash.2d 896, 898, 913 P.2d 369 (1996). This is because when the facts present a question of self-defense, the State must prove the absence of self-defense beyond a reasonable doubt, just as any other element. State v. Acosta, 101 Wash.2d 612, 615-16, 683 P.2d 1069 (1984).
¶ 45 In a criminal prosecution, the court "`is required to define technical words and expressions, but not words and expressions which are of ordinary understanding and self-explanatory.'" State v. Lyskoski, 47 Wash.2d 102, 111, 287 P.2d 114 (1955) (quoting 1 EDWARD R. BRANSON & A.H. REID, THE LAW OF INSTRUCTIONS TO JURIES § 55, at 169 (3d ed.1936)). A term is "technical" when the legislature gives it a meaning that differs from common usage. State v. Brown, 132 Wash.2d 529, 611, 940 P.2d 546 (1997). But here the trial court gave only this first sentence of the statutory definition, which amounted to the common meaning of the term, rather than the more nuanced complete statutory definition which fit the defendant's theory of the case. See WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1367 (1961) (defining "malice" as "intention or desire to harm another usu[ally] seriously through doing something unlawful or otherwise unjustified: willfulness in the commission of a wrong: evil intention ..."). Thus the defendant was robbed of the benefit of the self-defense instruction in the situation presented where the victim interferes with the defendant's personal property while not motivated by evil intent.
¶ 46 As the majority states, citing State v. Mills, 154 Wash.2d 1, 7, 109 P.3d 415 (2005):
To satisfy the constitutional demands of a fair trial, the jury instructions, when read as a whole, must correctly tell the jury of the applicable law, not be misleading, and permit the defendant to present his theory of the case.
Majority at 764. The majority also acknowledges the constitution "`requires the jury be instructed as to each element of the offense charged,'" and "[t]his requirement also applies to a self-defense jury instruction." Id. *768 (quoting State v. Fowler, 114 Wash.2d 59, 69-70, 785 P.2d 808 (1990)).
¶ 47 The majority essentially justifies its result by claiming that "the failure of the trial court to provide the complete statutory definition of `malice' was, at most, a failure to further define one of the elements." Majority at 764. Not so. The court gave an incorrect definition of this term of art which was fatal to the defendant and obviously prejudicial. This was "manifest error affecting a constitutional right" as correctly held by the Court of Appeals because the error was truly constitutional and manifest, i.e., it had practical and identifiable consequences in the trial of the case. State v. Kirkpatrick, 160 Wash.2d 873, 880, 161 P.3d 990 (2007).
¶ 48 Accordingly I would affirm the Court of Appeals, and I dissent.
NOTES
[1] This distinction also comports with the common legal definition of "manifest error": "[a]n error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record." BLACK'S LAW DICTIONARY 622 (9th ed.2009). "Manifest constitutional error" is defined as "[a]n error by the trial court that has an identifiably negative impact on the trial to such a degree that the constitutional rights of a party are compromised." Id.
[2] It is important to note the trial court arguably committed no instructional error in this case. However, because RAP 2.5(a) allows appellate courts to review claims of error only if the claimed error is manifest and constitutional, we first determine whether the claimed error is indeed manifest and constitutional before we review the merits of the claim of error.
[3] Consistent with other case law, only after making the determination that the constitutional right was affected and there was error did the court determine whether the error was harmless so as to reverse the conviction. McCullum, 98 Wash.2d at 497-98, 656 P.2d 1064.
[4] RCW 9A.04.110(12) provides:

"Malice" and "maliciously" shall import an evil intent, wish, or design to vex, annoy, or injure another person. Malice may be inferred from an act done in wilful disregard of the rights of another, or an act wrongfully done without just cause or excuse, or an act or omission of duty betraying a wilful disregard of social duty.
[5] Even when we are reviewing a preserved challenge to a jury instruction, we give the trial court great deference in the wording of its instructions. Ng, 110 Wash.2d at 41, 750 P.2d 632 (citing Roberts v. Goerig, 68 Wash.2d 442, 455, 413 P.2d 626 (1966)).
[1] The majority faults Ryan O'Hara for not objecting to a definitional instruction of which he had no prior notice and no prior opportunity to research. Under these circumstances the alleged error should be reviewed in the interest of justice, even if found not to be a manifest constitutional error as RAP 2.5(a) permits but does not require the Court of Appeals to decline review of an assignment of error.
[2] In contrast to State v. Scott, 110 Wash.2d 682, 686, 757 P.2d 492 (1988), which concerned omission of a definition for a common term, "knowledge."