# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>              Respondent,<br><br>     v.<br><br>TERRY LEE KERTIS,<br><br>              Appellant. | No. 78618-1-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: November 4, 2019 |

APPELWICK, C.J. — Kertis appeals his conviction and sentence for attempting to elude a police vehicle. He claims that the jury instructions at trial relieved the State of proving the required mens rea beyond a reasonable doubt. He further claims that the trial court did not consider his request for a first time offender waiver because it erroneously believed that it was barred by statute. We affirm.

## FACTS

In September 2016, Terry Kertis attended the annual Oyster Run in Anacortes. He drove home from the event at around 4:30 p.m. on his Harley Davidson motorcycle. Kertis claims that he got into a conflict with another motorcyclist while driving his motorcycle up Commercial Avenue on his way home. He claims the other motorcyclist rammed the wheels of his motorcycle several times. He further claims that this interaction made him feel fearful and panicked.

Captain Lucien D'Amelio made contact with Kertis while driving on Commercial. He was driving an unmarked black Toyota Camry equipped with lights and sirens, but was dressed in his police officer's uniform. The lights and sirens on his vehicle were at the top of his windshield, rather than on the roof of his car as they would be in a marked police car. D'Amelio testified that a motorcycle skidded sideways behind his car. Kertis admitted he was driving the motorcycle. D'Amelio thought Kertis would hit him, so he moved his car forward to avoid contact. Kertis completed his skid stopping his bike near the rear quarter panel of D'Amelio's car with his bike in the center turn lane. He then moved his bike behind D'Amelio as traffic began to move. The pair proceeded to move forward in stop and go traffic down Commercial.

D'Amelio testified that about a block later, Kertis began loudly revving his engine. Kertis then moved his bike to the center turn lane, passing on D'Amelio's left, then drove in between cars to the right shoulder. D'Amelio watched as Kertis accelerated up the right shoulder. He estimated that Kertis was driving well over the 30 mile per hour speed limit.

D'Amelio then activated his lights and siren and moved forward through traffic. Other cars moved out of D'Amelio's way after the lights and siren were activated. With his lights and siren still on, D'Amelio pulled up to the side of Kertis's bike near the intersection of 32nd Street and Commercial. D'Amelio rolled down his window and told Kertis to pull over.

Kertis looked at D'Amelio, who was in uniform, pulled into the right hand turning lane, and accelerated straight through a red light in the intersection ahead.

2

D'Amelio saw two cars brake hard to avoid a collision with Kertis in the intersection. Kertis proceeded to weave between the two braking cars, to hop up to the sidewalk then drive on the sidewalk as he continued to move away from D'Amelio. D'Amelio determined he would be unable to pursue Kertis due to traffic. He shut down his lights and sirens.

D'Amelio had recognized Kertis's unique motorcycle and surmised that Kertis was the rider. He made the decision to proceed to Kertis's residence. D'Amelio met Sergeant Chad Pruiett near Kertis's residence, and they proceeded to the residence together.

The officers found Kertis outside his home when they arrived. They both testified that Kertis made a series of incriminating statements during the conversation. These statements included that Kertis knew D'Amelio was a police officer and was trying to stop him. D'Amelio also testified that Kertis acknowledged driving on the sidewalk and speeding to get away from him.

The State charged Kertis with attempting to elude a police vehicle. At trial, Kertis denied knowing that D'Amelio's car was a police vehicle while he was riding his motorcycle. He testified that he did not observe any lights or sirens, or an officer directing him to pull over. He acknowledged driving on the sidewalk, but said he was unable to recall passing cars in the turning lane or running a red light. He also said that he could not recall making incriminating statements to D'Amelio at his home.

A jury found Kertis guilty of attempting to elude a pursuing police vehicle. It also found that he endangered people other than the pursuing officer. Kertis had

3

no prior felonies and requested a 90 day sentence pursuant to a first time offender waiver. The trial court sentenced Kertis to 14 months and one day imprisonment. It indicated that it did not believe that the 12 month endangerment enhancement was waivable, stating that its "hands [were] tied." The court also imposed $600 in legal financial obligations (LFOs).

Kertis appeals.

## DISCUSSION

Kertis makes two arguments. First, he argues that he is entitled to a new trial because the knowledge instruction given to the jury was constitutionally deficient. Second, he argues that he should be resentenced because the trial court erroneously believed that it could not consider his request for a first time offender waiver.

I. Jury Instructions

Kertis argues that the jury instructions were constitutionally deficient. Specifically, he argues that the knowledge instruction relieved the State of its burden to prove actual knowledge and instead allowed the State to prove only constructive knowledge. Kertis did not object to the jury instructions at trial. He argues that he is not precluded from raising the issue for the first time on appeal because the instructional deficiency is a manifest error affecting a constitutional right. RAP 2.5(a).

In analyzing an asserted constitutional interest, we do not assume the alleged error is of constitutional magnitude. State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). We look first to the asserted claim and assess whether, if

4

correct, it implicates a constitutional interest as compared to another form of trial error. Id. If we find the error of constitutional magnitude, we must then determine whether the error was manifest in the trial record. Id. at 99.

Our Supreme Court has held that an instruction relieving the State of its burden to prove actual knowledge to be of constitutional magnitude. See State v. Shipp, 93 Wn.2d 510, 515, 610 P.2d 1322 (1980). If Kertis is correct that language in his jury instructions relieved the state of its burden, then the error would be manifest in the record because it appears in the jury instructions.

In this case, the jury was instructed on the elements that must be proven beyond a reasonable doubt to convict Kertis of attempting to elude a police vehicle:

> To convict the defendant of the crime of attempting to elude a police vehicle, each of the following elements of the crime must be proved beyond a reasonable doubt:
>
> (1) That on or about September 25, 2016, the defendant drove a motor vehicle;
>
> (2) That the defendant was signaled to stop by a uniformed police officer by hand, voice, emergency light, or siren;
>
> (3) That the signaling police officer's vehicle was equipped with lights and siren;
>
> (4) That the defendant willfully failed or refused to immediately bring the vehicle to a stop after being signaled to stop;
>
> (5) That while attempting to elude a pursuing police vehicle, the defendant drove his vehicle in a reckless manner; and
>
> (6) That the acts occurred in the State of Washington.
>
> If you find from the evidence that each of these elements has been proved beyond a reasonable doubt, then it will be your duty to return a verdict of guilty.

On the other hand, if after weighing all the evidence you have a reasonable doubt as to any one of these elements, then it will be your duty to return a verdict of not guilty.

Another instruction defined "willfully": "A person acts willfully as to a particular fact when he or she acts knowingly as to that fact." To assist with this definition, another instruction was included defining "knowledge":

A person knows or acts knowingly or with knowledge with respect to a fact when he or she is aware of that fact. It is not necessary that the person know that the fact is defined by law as being unlawful or an element of a crime.

If a person has information that would lead a reasonable person in the same situation to believe that a fact exists, the jury is permitted but not required to find that he or she acted with knowledge of that fact.

When acting knowingly as to a particular fact is required to establish an element of a crime, the element is also established if a person acts intentionally as to that fact.

Kertis claims that the use of "reasonable person" language causes this instruction to suffer from the same constitutional defects as the knowledge instruction rejected in Shipp. Most notably, he claims that it allowed the jury to convict Kertis based on constructive, rather than subjective knowledge.

In light of Shipp, the pattern instruction was revised. State v. Leech, 114 Wn.2d 700, 710, 790 P.2d 160 (1990), abrogated on other grounds by In re Pers. Restraint of Andress, 147 Wn.2d 602, 56 P.3d 981 (2002). This is the same instruction used to define knowledge in this case. See 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 10.02, at 222 (4th ed. 2016). The Supreme Court found the revised instruction constitutional in the face of a similar challenge. Leech, 114 Wn.2d at 710.

We find no constitutional error in the jury instructions.

## II.   First Time Offender Waiver

Kertis next contends that the trial court erred in failing to consider his request for a first time offender waiver under RCW 9.94A.650(2). He claims that the trial court erroneously believed that the first time offender waiver could not be applied to the 12 month endangerment enhancement. Kertis has already been released from prison. A case is moot if a court can no longer provide effective relief. Orwick v City of Seattle, 103 Wn.2d 249, 253, 692 P.2d 793 (1984).

Kertis argues that the issue is not moot because a finding that he should have been given a first time offender waiver would relieve him of certain LFOs. He points to RCW 9.94A.650(4), "As a condition of community custody . . . the court may order the offender to pay all court-ordered legal financial obligations." He argues this language precludes the imposition of LFOs except as a condition of community custody.

Kertis misreads the statute. By its plain terms, the statute does not prohibit LFOs being assessed against first time offenders. It merely gives the court the option to require payment of all LFOs as a condition of community custody, rather than setting monthly payments under RCW 9.94A.760. RCW 9.94A.650(4). The LFOs assessed against Kertis are mandated by RCW 7.68.035(1)(a) and RCW 43.43.7541. Neither statute contains a waiver provision for first time offenders. RCW 7.68.035(1)(a); RCW 43.43.7541.

Because Kertis has already served his sentence, and a first time offender waiver would not relieve him of his LFOs, we can no longer provide him effective

7

relief. The issue is therefore moot, and we decline to address whether the trial court mistakenly believed it could not waive the endangerment enhancement.

We affirm.

_Appelwick, CJ_

WE CONCUR:

_Smith, J._                     _Dwyer, J._