IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53492-4-II |
| Respondent, | |
| v. | |
| SEAN LEE LAIR, | UNPUBLISHED OPINION |
| Appellant. | |

GLASGOW, J.—After a morning of drinking and golf, Sean Lee Lair was roughhousing with his coworker, Brendon Byman, in Lair's backyard. When another coworker, Scott Mallow, saw the two roughhousing, he became concerned for Byman and put Lair into a choke hold. Lair released Byman, and Mallow released Lair. Lair then lunged at Mallow, stabbing him in the chest with a knife.

The State charged Lair with second degree assault while armed with a deadly weapon. A jury rejected Lair's self-defense theory and found Lair guilty. Lair appeals his conviction and argues that the trial court erred by issuing a first aggressor jury instruction. Lair also argues that his defense counsel rendered ineffective assistance by failing to object to the instruction.

Because Lair failed to object to the first aggressor instruction below, and he does not show that the instruction constituted manifest constitutional error, we decline to review his first aggressor instruction claim. We also hold that Lair fails to show that his defense counsel's failure to object to the instruction constituted deficient performance or prejudiced him and, therefore, his ineffective assistance claim fails. Accordingly, we affirm Lair's conviction.

FACTS

The State charged Lair with second degree assault with a deadly weapon enhancement based on a fight between Lair and his former coworker Mallow, which ended with Lair stabbing Mallow in the chest.

At trial, Mallow testified that he, Lair, and two other coworkers—Byman and Todd Bartlett—planned to play golf together in November 2018. The foursome became significantly intoxicated, left the golf course after completing just four holes, and returned to Lair's home. Bartlett left, and Lair, Mallow, and Byman remained at Lair's home.

Mallow said that he used Lair's restroom and when he returned to the backyard, he saw Lair and Byman wrestling on the ground. Lair had Byman in a choke hold. Byman appeared to be having trouble breathing. Mallow asked Lair what he was doing, and Lair responded, "This is like my son." Verbatim Report of Proceedings (VRP) (June 11, 2019) at 45. Mallow told Lair to let go of Byman, but Lair began squeezing Byman's neck tighter. Mallow became concerned for Byman's safety and tried, unsuccessfully, to pry the two apart. Mallow put Lair in a choke hold in an attempt to make Lair release Byman. Lair eventually let go of Byman.

Mallow testified that when Lair released Byman, Mallow released Lair. When Mallow turned around to face Lair, Lair lunged toward Mallow with a knife and cut Mallow across his thumb. Mallow asked Lair, "[W]hat are you doing?" and stepped back. VRP (June 11, 2019) at 49. Lair then lunged forward a second time and stabbed Mallow in the chest. Mallow started screaming at Lair, and Lair backed away and went inside his house. Mallow left through the backyard fence and eventually went to a hospital for stitches.

Byman testified at trial that he and Lair had been roughhousing in Lair's backyard. Byman recalled that his arm dragged across the ground, but he was not concerned about blacking out from air restriction. Byman thought he and Lair were just playing around, as they had in the past. Even so, Byman's arm was injured enough to bring tears to his eyes.

Lair also testified at trial, and his version of events was different from Mallow's. Lair said that after the group returned to his home after golfing, Lair and Byman started playing around and wrestling. At some point, Mallow joined them in the backyard and grabbed Lair by the neck. Lair explained that he had a hearing impairment that might have limited his ability to hear if Byman told him to stop. Mallow squeezed Lair's neck and Lair testified that he lost consciousness. After Mallow released Lair, and Lair regained consciousness, Lair and Mallow argued. Lair twice asked Mallow to leave. Lair said that Mallow would not leave and when Mallow lunged to grab Lair by the throat a second time, Lair pulled a knife out of his pocket and stuck Mallow with the blade. The confrontation ended after Lair stabbed Mallow.

Lair and the State agreed that self-defense instructions were appropriate given the evidence. The trial court instructed the jury that use of force is lawful "when used by a person who reasonably believes that he is about to be injured in preventing or attempting to prevent an offense against the person, and when the force is not more than is necessary." Clerk's Papers (CP) at 54.

The State also proposed a first aggressor instruction. Lair did not object, and the trial court gave the following instruction to the jury.

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon use force upon or toward another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts

and conduct provoked or commenced the fight, then self-defense is not available as a defense.

CP at 59.

The jury found Lair guilty of second degree assault with a deadly weapon enhancement. Lair appeals his conviction.

ANALYSIS

I. FIRST AGGRESSOR INSTRUCTION

Lair argues that the trial court erred by giving a first aggressor jury instruction. Because Lair failed to object to the instruction at trial and does not show that it constituted manifest constitutional error, we decline to address the issue.

Generally, a defendant cannot challenge a jury instruction on appeal if they did not object to the instruction in the trial court. *State v. Grott*, 195 Wn.2d 256, 267, 458 P.3d 750 (2020); CrR 6.15(c). But under RAP 2.5(a)(3), an appellant may raise an error for the first time on appeal if the error is "manifest" and truly of constitutional dimension. *Grott*, 195 Wn.2d at 267. The appellant must identify an error of constitutional magnitude and make a "'plausible showing . . . that the asserted error had practical and identifiable consequences in the trial of the case.'" *Id.* at 269 (internal quotation marks omitted) (quoting *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

Jury instruction errors that have been held to be manifest constitutional errors involve errors "'directing a verdict, shifting the burden of proof to the defendant, failing to define the beyond a reasonable doubt standard, failing to require a unanimous verdict, and omitting an element of the crime charged.'" *Id.* at 268 (internal quotation marks omitted) (quoting *O'Hara*, 167 Wn.2d at 100-01). "Because first aggressor instructions do not actually relieve the State of

4

its burden of proof, erroneously given first aggressor instructions are not necessarily errors of constitutional magnitude." *Id*. at 268-69.

Here, Lair neither argues nor shows that the instructional error was a manifest error of constitutional magnitude. He fails to discuss RAP 2.5(a)(3) in his opening brief. Instead, Lair contends that he sufficiently preserved the alleged error by not proposing the instruction himself. But it is well established that the failure to contemporaneously object to proposed jury instructions waives the issue for appeal unless it is a manifest error affecting a constitutional right. *See id.* at 268; RAP 2.5(a)(3); CrR 6.15(c). Lair fails to argue or establish either that the alleged error was of a constitutional dimension or that it was manifest. Therefore, we do not address Lair's claim for the first time on appeal.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In the alternative, Lair argues that he received ineffective assistance of counsel when defense counsel failed to object to the first aggressor instruction. We disagree.

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee effective assistance of counsel. *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011). To demonstrate that he received ineffective assistance of counsel, Lair must show both (1) that defense counsel's performance was deficient and (2) that the deficient performance resulted in prejudice. *State v. Linville*, 191 Wn.2d 513, 524, 423 P.3d 842 (2018). Defense counsel's performance is deficient if it falls below an objective standard of reasonableness. *State v. Estes*, 188 Wn.2d 450, 458, 395 P.3d 1045 (2017). Prejudice ensues if the result of the proceeding would have been different had defense counsel not performed deficiently. *Id*.

Lair fails to show that counsel was deficient or that prejudice resulted from the failure to object to the first aggressor instruction because there is no reasonable probability that an objection would have been successful. *State v. Gerdts*, 136 Wn. App. 720, 727, 150 P.3d 627 (2007). "Whether the State produced sufficient evidence to justify a first aggressor instruction is a question of law" that we review de novo. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). "The State need only produce some evidence that [the defendant] was the aggressor to meet its burden of production" warranting the instruction. *Id.*

Here, the first aggressor instruction was appropriate if Lair provoked Mallow by initiating the fight. Although some testimony indicated that Lair was just roughhousing with Byman, Byman also testified that his arm was injured enough to bring tears to his eyes. And Mallow testified that he unsuccessfully tried to get Lair to let go of Byman first verbally, and then by trying to pry them apart. Mallow also testified that once they were all on their feet, Lair lunged at him with the knife first. Even though Lair's testimony differed from Mallow's, there was some evidence that Lair was the aggressor who initiated the fight. Thus, defense counsel reasonably did not object to the first aggressor instruction where the instruction was supported by the evidence.

Lair also fails to show prejudice. For the same reasons, even had defense counsel objected, there is no reasonable probability that the trial court would have sustained an objection to the first aggressor instruction because there was some evidence supporting the instruction. Lair, therefore, fails to show that he received ineffective assistance of counsel.

We affirm.

No. 53492-4-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

, C.J.
Lee, C.J.

Worswick, J.