IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Detention of:<br><br>I.H. | No. 87109-9-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

BUI, J. — I.H.[1] appeals the trial court's 14-day involuntary treatment order. He claims for the first time on appeal that his appearance via video violates his constitutional right to due process and that the trial court totally disregarded the requirements of the "Involuntary Treatment Act" (ITA), ch. 71.05 RCW. Even if the error was of constitutional magnitude, the error was not manifest. Accordingly, we affirm.[2]

FACTS

A court evaluator at Fairfax Hospital filed a petition for a 14-day involuntary treatment pursuant to the ITA, alleging that I.H. suffered from a mental health disorder, and as a result, presented a likelihood of harm to self, to others, and was gravely disabled. Subsequently, a probable cause hearing was held to determine the merits of the petition. I.H., his attorney, and the State's

---

[1] The appellant's brief refers to I.H. using "he/him" pronouns, while I.H. stated at the probable cause hearing that they prefer "they/them" pronouns. We refer to I.H. by "he/him" pronouns for clarity. We intend no disrespect.

[2] Because an involuntary commitment order may have adverse collateral consequences on future involuntary commitment determinations, this case is not moot even though the commitment order has since expired. See In re Det. of M.K., 168 Wn. App. 621, 629, 279 P.3d 897 (2012); RCW 71.05.245(3).

witness Anita Vallee, a Fairfax Hospital court evaluator, appeared from a hearing room located at Fairfax Hospital. The court commissioner appeared from a courtroom in King County Superior Court. The State's other two witnesses, a Washington State Patrol Trooper and a court evaluator for Evergreen Hospital, Hyemin Song, appeared via video from locations not reflected in the record.

The State's three witnesses testified in support of I.H.'s involuntary commitment. The trooper described I.H.'s "overall nature," as "out of normal" when he contacted I.H. near a busy roadway. He observed I.H. not wearing socks, shoes, or a shirt. The trooper noted I.H. made unusual statements, such as asking why the trooper did not shoot him, and mentioning "being burned because it would hurt more." Court evaluator Song testified that during I.H.'s evaluation, I.H. "focused on pinching himself to cause pain," and he verbally expressed "violent actions, such as punching people in the face." Song also stated I.H. was actively responding to internal stimuli that told him to hurt himself. Court evaluator Vallee observed I.H. had poor hygiene and grooming. Vallee described I.H.'s behavior as "erratic and aggressive," and stated I.H. punched medical staff in the face multiple times necessitating chemical restraints to be administered.

During the proceeding, I.H. made numerous requests, objections, and statements, including requests about vaping, for court recesses and attorney consultations, and statements about the courtroom video and participants. I.H. also objected during witness testimony and attorney arguments. The trial court and I.H.'s attorney selectively addressed I.H.'s requests and objections. We

elaborate on the nature of I.H.'s requests, statements, and objections and the trial court's responses in the analysis set forth below.

The trial court concluded I.H. was gravely disabled, posed a serious risk of harm to others, and ordered I.H. involuntarily committed for 14 days. I.H. timely appealed.

ANALYSIS

The ITA provides the statutory framework for involuntary detention and treatment of individuals who, as a result of their mental disorders, present an imminent likelihood of serious harm or is in imminent danger because of being gravely disabled. See generally RCW 71.05; RCW 71.05.230; RCW 71.05.020(18). Individuals may be detained at an evaluation and treatment facility for up to 120 hours pending further evaluation for treatment. RCW 71.05.180. The individual is released after the initial 120 hours unless medical professionals petition the court to involuntary hold the person for up to 14 days. RCW 71.05.210; RCW 71.05.240(1). The petition must contain facts to support that the person, as a result of the behavioral disorder, presents a likelihood of serious harm to self or others, or is gravely disabled. RCW 71.05.230(4)(b).

The court conducts a hearing on the petition to determine if a 14-day commitment will be ordered for additional treatment. RCW 71.05.240(1). When construing the requirements of the ITA, courts must focus on the merits of the petition with a presumption in favor of deciding petitions on their merits, except where requirements have been totally disregarded. RCW 71.05.010(2).

The term "totally disregarded" is not statutorily defined. See generally

RCW 71.05.020. In <u>In re Det. of D.H.</u>, 1 Wn.3d 764, 776-77, 533 P.3d 97 (2023), the court discussed the definitions and reasoning in the civil commitment context. The court in <u>D.H.</u> turned to the dictionary definitions to discern their meaning. <u>D.H.</u>, 1 Wn.3d at 777. The dictionary definition of "disregard" means "to treat without fitting respect or attention," "to treat as unworthy of regard or notice," and "to give no thought to: pay no attention." <u>D.H.</u>, 1 Wn.3d at 777 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 655 (2002)). Whereas "totally" means, "in a total manner: completely, wholly."[3] <u>D.H.</u>, 1 Wn.3d at 777 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2415 (2002)).

In its reliance on these definitions and analogous reasoning, the court stated that total disregard is "not a mere oversight but amounts to a *complete* failure to treat the ITA with respect or attention."[4] <u>D.H.</u>, 1 Wn.3d at 777. The requirements of the ITA are not totally disregarded in every case where some aspect of the act has been violated. <u>In re Det. of A.C.</u>, 1 Wn.3d 731, 745, 533 P.3d 81 (2023).

I.H. claims his 14-day involuntary commitment order should be dismissed because the trial court totally disregarded his requests for an in-person proceeding. We disagree because I.H. did not make a clear request to appear in-person.

Any motion for an in-person proceeding should be unequivocal and supported by good cause. <u>See, e.g.</u>, RCW 71.05.820 (the court, upon its own

---

[3] Emphasis omitted.
[4] Emphasis added.

motion or upon a motion for good cause by any party, may require all parties and witnesses to participate in the hearing in person rather than by video); State v. Curry, 191 Wn.2d 475, 480, 423 P.3d 179 (2018) (a defendant's waiver of the right to counsel and request to proceed pro se must be unequivocal). Whether a statement is unequivocal is fact specific and highly contextual. See, e.g., Curry, 191 Wn.2d at 494 ("The record gives no indication that Curry's request [to waive his right to counsel] was inadvertent or accidental . . ."); see also State v. Thompson, 169 Wn. App. 436, 451-53, 290 P.3d 996 (2012) (analyzed appellant's trial testimony in conjunction with his pro se motion to determine whether his motion was unequivocal).

I.H. argues he requested to appear in person by making these statements at various times during the hearing:  "I'd . . . *prefer*[5] to be in the courtroom," "I *wanted*[6] to be in the courtroom to talk," and "I *would*[7] *rather* be there in person." These were not clear requests because the use of "prefer" and "would rather be" indicate I.H.'s preferences rather than his demands. His statement "I *wanted to be* in the courtroom to talk"[8] is closer to a demand, but still is not clear, given his other requests that do demonstrate his clear demands.

For example, throughout the proceedings, I.H. demanded a vape. He stated, "I *need* a vape"[9] twice, "I *wanted* to vape the whole time,"[10] and "I *have to*

---

[5] Emphasis added.
[6] Emphasis added.
[7] Emphasis added.
[8] Emphasis added.
[9] Emphasis added.
[10] Emphasis added.

*have* a vape."[11] I.H.'s requests for a vape are unequivocal compared to all three requests for an in-person proceeding. Additionally, there were other topics I.H. was clear about, including requests to the trial court for recesses, for time to speak to his attorney privately, and to use "they/them" pronouns when addressing him.

Given I.H.'s unequivocal statements about other topics, it was not obvious to the trial court that I.H. requested to appear in person for the proceeding.

We also look at how the trial court and I.H.'s attorney addressed the requests and statements in the determination of whether the court "total[ly] disregard[ed]" the ITA. The trial court appropriately addressed I.H.'s numerous requests and interjections that were not substantively or procedurally relevant to the ITA proceeding. In addition to the consistent vape demands, I.H. repeatedly interjected during witness testimony and interrupted the State's closing argument. Some of these interjections include asking whether witness Song was a "pizza delivery guy," correcting testimony about medication history by stating, "I have also taken Xanax, as prescribed. It was put into my macaroni and cheese as a child," and disagreeing with the State's statement that he was unkempt, "I keep my room clean." In response, the trial court either thanked him, continued with the proceeding, or reminded I.H. to wait for his turn to speak. The trial court, on its own initiative, addressed I.H.'s interruptions by offering paper and pencil for I.H. to write things he wished to discuss with his attorney.

The trial court was also attentive when I.H. made requests or statements

---

[11] Emphasis added.

about matters relevant to the proceeding. For example, when I.H. requested a bathroom recess, the trial court immediately granted the request. Moreover, after I.H. stated he preferred "they/them" pronouns, the trial court referred to I.H. using "they/them" pronouns and the honorific "Mx." for the remainder of the proceeding.

The trial court also entertained I.H.'s attorney's requests on behalf of I.H. For instance, the trial court granted I.H.'s attorney's request for I.H. to take a second bathroom recess within 15 to 20 minutes of the first. Another recess was granted after the trial court clarified with I.H. that his statement "So, I'm speaking to my attorney privately" was a request to speak to his attorney.

In summary, the trial court addressed I.H.'s relevant, clear requests for recesses and pronoun preferences, acknowledged his courtroom behavior, but selectively did not address his superfluous objections and requests for a vape, and responded to all his attorney's requests. Given the trial court's attention to I.H. and his attorney during the proceeding, even if the court ignored the requests, it was not to the level of total disregard required to demonstrate a statutory violation.

Next, I.H. claims that holding the proceeding via video violated his due process rights. We disagree.

An "appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). However, we may review an assignment of error raised for the first time on appeal when the claimed error concerns a " 'manifest error affecting a constitutional right.' " State v. O'Hara, 167 Wn.2d 91, 98, 217 P.3d 756 (2009) (quoting RAP 2.5(a)(3)). To satisfy these requirements,

the appellant must demonstrate (1) the error is manifest, and (2) the error is truly of constitutional dimension. O'Hara, 167 Wn.2d at 98.

I.H. maintains that he had a federal due process right to be physically present on request at his commitment hearing and that RCW 71.05.820 unconstitutionally abridges that right by conditioning an ITA respondent's physical presence at commitment hearing upon a showing of good cause. The Fourteenth Amendment to the United States Constitution forbids the State from "depriv[ing] any person of . . . liberty . . . without due process of law." U.S. CONST. amend. XIV. "[I]involuntary commitment to a mental hospital . . . is a deprivation of liberty which the State cannot accomplish without due process of law." O'Connor v. Donaldson, 422 U.S. 563, 580, 95 S. Ct. 2486, 45 L. Ed. 2d 396 (1975) (Burger, C.J., concurring). Thus, I.H. alleges an error affecting a constitutional right.

Under RAP 2.5(a)(3), "manifest" " 'requires a showing of actual prejudice,' " which means demonstrating a " 'plausible showing . . . that the asserted error had practical and identifiable consequences' " in the proceeding. O'Hara, 167 Wn.2d at 99-100[12] (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)). In determining "whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error." O'Hara, 167 Wn.2d at 100. " 'If the facts necessary to adjudicate the claimed error are not in the record on appeal, no actual prejudice

---

[12]Internal quotation marks omitted.

is shown and the error is not manifest.' " O'Hara, 167 Wn.2d at 99 (quoting State v. McFarland, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). I.H's asserted error does not satisfy the RAP 2.5(a)(3) requirements.

I.H. contends the following statements demonstrate he had difficulty perceiving and participating in the proceeding: "I'm not in a . . . courtroom. . . . I'm in a hospital, and I'm looking at a courtroom," "My screen is a lot more buggy, because I'm not actually in the courtroom. I'd . . . prefer to be in the courtroom," and "I can't see my jury . . . ."

While I.H. may have expressed confusion about courtroom orientation and the participants in the proceeding, the apparent confusion is neither related to his mental illness nor the main symptoms therefrom. The ITA petition and witness testimony primarily cited I.H.'s behavior issues. I.H. punched medical staff in the face multiple times with a closed fist, struck fire personnel on the arm, presented as disheveled and unable to care for himself, and made suicidal statements. Additionally, medical professionals connected I.H.'s aggressive and assaultive behavior to his response to internal stimuli, a symptom of his schizophrenia. The stimuli reportedly told him to hurt others and himself. There is nothing in the record that connects I.H.'s mental illness to interference with his perception or interaction with technology.

In fact, even when appearing via video, I.H.'s behavior shows his mental health struggles did not limit his courtroom participation. He was able to track and listen to witnesses and both counsels, as evidenced by his timely objections and corrections. For example, during the State's closing argument, I.H. objected to

9

counsel's statement that a "police officer" contacted him on the side of the road; he insisted it was a "fire department person." When I.H.'s attorney directed him to remain silent, he responded, "if I object, she has to stop talking right?" Additionally, I.H. objected to the trooper's description of him wearing a "black t-shirt with red lettering" by immediately correcting "It was gray." The record does not support that the video platform actually prejudiced I.H. Therefore, the claimed due process error was not manifest. We decline to reach the merits of I.H.'s constitutional arguments.

We affirm.

Bui, J.

WE CONCUR:

Chung, J.                                    Mann, J.