# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | NO. 67394-7-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| VICTOR MANUEL GOMEZ-RAMIREZ, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 11, 2013 |
| | ) | |

LEACH, C.J. — Victor Gomez-Ramirez appeals his convictions for second degree assault and felony harassment. He primarily claims that the State violated his constitutional right to remain silent when it improperly elicited testimony implicating this right to silence and then argued to the jury in closing argument that Gomez-Ramirez "d[id]n't want to talk to the police" at the time of the incident. Because Gomez-Ramirez did not object to this evidence or argument at trial and fails to demonstrate that the conceded error had practical and identifiable consequences in this case, we decline to review this claim of error for the first time on appeal. We reject Gomez-Ramirez's other claims and affirm.

FACTS

On August 28, 2009, Jerson Bolanos was supervising a painting crew that included Victor Gomez-Ramirez. When he heard Gomez-Ramirez make a derogatory comment about people of Mexican descent, Bolanos reprimanded Gomez-Ramirez and instructed him to get back to work.

In response, Gomez-Ramirez climbed down from his ladder and said he was going to hit Bolanos. Gomez-Ramirez tried but failed to punch Bolanos. While continuing to argue, Gomez-Ramirez took a box cutter out of his pocket. With the blade exposed, he swung at Bolanos. As he did this, Gomez-Ramirez said, "I'm going to kill you." Bolanos backed away as Gomez-Rodriguez waived the knife at him several more times. Bolanos then turned around and ran. Gomez-Ramirez chased him. When he was some distance ahead of Gomez-Ramirez, Bolanos took out his cell phone. Gomez-Ramirez said, "You call the police, I gonna kill you." Bolanos continued to make the call, and Gomez-Ramirez got into his truck and left.

Issaquah Police Officer Christian Munoz responded. He described Bolanos as appearing upset. Officer Munoz took statements from Bolanos and the three other workers at the jobsite.

One of the other painters, Jessie Salinas, testified that he heard Gomez-Ramirez arguing with Bolanos. He then saw Gomez-Ramirez with a box cutter in

his hand and Bolanos "running for his life." Salinas said Gomez-Ramirez tried to cut Bolanos with the knife and nearly succeeded. He described Bolanos as frightened, nervous, and shaking after the incident.

Another painter, Jose Moreno, testified that Bolanos and Gomez-Ramirez were arguing because Bolanos was "discriminating against Central American folks."[1] Moreno was on a ladder 8 to 10 feet in the air and about 10 to 14 feet away from where the two men were fighting. Initially, Moreno said the two exchanged "strong words," but nothing else happened. But then Moreno admitted that Gomez-Ramirez also threatened to "do something" to Bolanos, and he saw Gomez-Ramirez swing and lunge toward Bolanos. Moreno did not see anything in Gomez-Ramirez's hand. Moreno and Gomez-Ramirez had known each other when they were children living in Central America.

Gomez-Ramirez testified that he was painting and talking to himself about how he was poorly treated by the supervisor when Bolanos approached him and fired him without explanation. But he said there "wasn't really an argument" about it. Gomez-Ramirez later admitted that he was angry but only because Bolanos took a can of paint from him that he had purchased. He conceded, but then later denied, that the confrontation was physical and they were "going to hit each other." He denied threatening to kill Bolanos or using a weapon.

---

[1] Bolanos is from El Salvador.

The jury convicted Gomez-Ramirez of both second degree assault and felony harassment and found that he was armed with a deadly weapon when he committed the crimes. Gomez-Ramirez appeals.

## COMMENTS ON DEFENDANT'S SILENCE

Gomez-Ramirez argues that trial testimony elicited by the State and closing argument improperly implicated his constitutional right to silence. During Officer Munoz's testimony, the prosecutor asked whether, as a part of the investigation, he attempted to reach Gomez-Ramirez. The officer said he called Gomez-Ramirez's cell phone number, and someone answered but did not respond after the officer identified himself. The prosecutor asked,

> Q: So they answered your call and are you saying they answered it but once you introduced yourself, there was nobody on the phone?

The prosecutor then reiterated,

> Q: So, let me straighten this out. You called the phone number associated to Victor Gomez-Ramirez through your investigation, somebody answers the phone; and once you introduce who you are, assuming it's Police Officer Munoz—
> A: Right.
> Q: —no one on the phone talks and the phone call ends?
> A: That's correct.

The officer said he attempted to call the cell phone number again some days later and it was disconnected.

The prosecutor referred to this testimony in closing argument:

NO. 67394-7-I / 5

> And then a phone call made by, I believe, Officer Munoz.
> Two times he calls his phone number, he picks up, Hey this is
> Issaquah PD Officer Munoz. Click. Second time, Hey, this is
> Officer Munoz with Issaquah PD. Someone answers, click.
> Interesting how he doesn't want to talk to the police but he's not
> afraid to tell his rendition of the events up here.[2]

Gomez-Ramirez did not object to either Officer Munoz's testimony or the

prosecutor's closing argument. When he testified, he was not questioned about

a telephone call from Issaquah police.

Both the United States and Washington Constitutions guarantee an

individual's right to remain silent.[3] "A police witness may not comment on the

silence of the defendant so as to infer guilt from a refusal to answer questions."[4]

Nor may the State use a defendant's prearrest silence as substantive evidence of

guilt.[5]

However, a failure to object generally bars appellate review of claimed

errors.[6] An exception exists in the case of manifest error affecting a

constitutional right.[7] To determine if review is appropriate, the court engages in a

---

[2] The prosecutor's argument that Officer Munoz called a second time and received no response from the person on the line was inconsistent with Officer Munoz's testimony. But Gomez-Ramirez failed to object on an evidentiary or any other basis.

[3] U.S. CONST. amend. V; WASH. CONST. art. I, § 9; State v. Knapp, 148 Wn. App. 414, 420, 199 P.3d 505 (2009).

[4] State v. Lewis, 130 Wn.2d 700, 705, 927 P.2d 235 (1996).

[5] State v. Easter, 130 Wn.2d 228, 237, 922 P.2d 1285 (1996).

[6] RAP 2.5(a); State v. Williams, 159 Wn. App. 298, 312, 244 P.3d 1018, review denied, 171 Wn.2d 1025 (2011).

[7] RAP 2.5(a)(3).

two-fold inquiry. First, the court determines whether the claimed error is truly of constitutional magnitude, and second, the court must determine whether the error is "manifest."[8]

To establish that a constitutional error is manifest, the defendant must show that the asserted error actually prejudiced him.[9] The defendant bears the burden of showing that the constitutional error had practical and identifiable consequences in the trial of the case.[10]

Gomez-Ramirez claims that he is entitled to challenge Officer Munoz's testimony and the State's argument for the first time on appeal because the State's comments were "capable of persuading the lay jury" of his guilt. Gomez-Ramirez characterizes the case as a credibility contest and asserts that the evidence and argument about his silence tipped the balance in favor of the State. We disagree. The State's case did not depend solely upon the jury's evaluation of Gomez-Ramirez's and Bolanos's credibility because the State presented other direct evidence of the crimes. Two eyewitnesses testified about the fight. Bolanos's account was corroborated by Salinas's testimony and, to a certain extent, also by Moreno's testimony.

---

[8] State v. Beskurt, No. 85737-7, 2013 WL 363135, at *5 (Wash. Jan. 31, 2013) (Madsen, C.J., concurring).
[9] State v. O'Hara, 167 Wn.2d 91, 99, 217 P.3d 756 (2009).
[10] O'Hara, 167 Wn.2d at 99 (quoting State v. Kirkman, 159 Wn.2d 918, 935, 155 P.3d 125 (2007)).

The State appropriately concedes its closing argument that Gomez-Ramirez had the opportunity to provide his version of events to the police and chose not to do so was improper. And, testimony about a suspect's refusal to talk to police may inappropriately influence a jury's assessment of credibility. But here, Gomez-Ramirez compromised his own credibility with contradictory, implausible testimony, inconsistent with that of the three other witnesses to the fight. Considering the strength and nature of the evidence presented, the improper questioning and argument did not lead to identifiable and practical consequences. Gomez-Ramirez fails to meet his burden to demonstrate actual prejudice and therefore cannot raise this claim of error for the first time on appeal.

## SAME CRIMINAL CONDUCT

Gomez-Ramirez contends that his convictions for assault and felony harassment encompassed the same criminal conduct and should have been counted as one conviction for purposes of calculating his offender score.

Although a criminal defendant may challenge an offender score for the first time on appeal, a defendant waives that right when the alleged error is based on a factual dispute or trial court discretion.[11] Where a defendant is

---

[11] State v. Graciano, No. 86530-2, 2013 WL 376076, at *2-3 (Wash. Jan. 31, 2013); In re Pers. Restraint of Goodwin, 146 Wn.2d 861, 874, 50 P.3d 618 (2002).

convicted of more than one crime, the trial court must make both factual and discretionary decisions in determining whether those crimes arose from the same criminal conduct.[12] Thus, by failing to raise the issue of same criminal conduct at sentencing, a defendant waives the right to argue that issue on appeal.[13] Because Gomez-Ramirez did not argue at sentencing that his offenses constituted the same criminal conduct, he cannot raise this issue for the first time on appeal.

Nevertheless, Gomez-Ramirez also claims trial counsel was deficient for failing to raise the same criminal conduct issue at sentencing. In order to succeed on a claim of ineffective assistance of counsel, the defendant must show that the counsel's performance was deficient and that the deficient performance prejudiced the defense.[14]

When two or more crimes constitute the same criminal conduct, the sentencing court must count them as one offense in computing the defendant's offender score if the crimes (1) require the same criminal intent, (2) are committed at the same time and place, and (3) involve the same victim.[15] Courts

---

[12] State v. Nitsch, 100 Wn. App. 512, 523, 997 P.2d 1000 (2000).
[13] State v. Jackson, 150 Wn. App. 877, 892, 209 P.3d 553 (2009); In re Pers. Restraint of Shale, 160 Wn.2d 489, 496, 158 P.3d 588 (2007).
[14] Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).
[15] RCW 9.94A.589(1)(a); State v. Lessley, 118 Wn.2d 773, 778, 827 P.2d 996 (1992).

narrowly construe the statutory requirement for same criminal conduct.[16] If any one of the three elements is missing, multiple offenses do not constitute the same criminal conduct, and each conviction must be counted separately.[17] Two crimes do not contain the same criminal intent when the defendant's intent objectively changes from one crime to the other.[18]

While the offenses here involved the same victim and were committed in the same place, Gomez-Ramirez cannot establish that his intent, objectively viewed, was the same for the assault and felony harassment convictions. Gomez-Ramirez focuses on Bolanos's testimony that he threatened him while simultaneously trying to attack him with a box cutter but ignores the evidence that once Bolanos gained some distance, Gomez-Ramirez threatened to kill Bolanos if he called the police. Therefore, after assaulting Bolanos with a deadly weapon, Gomez-Ramirez had the opportunity to reflect and form a new intent to commit felony harassment.[19] Also, in assaulting Bolanos, Gomez-Ramirez had the objective intent to cause apprehension and fear of injury, while his threat to kill Bolanos had the independent objective of preventing him from reporting the

---

[16] State v. Price, 103 Wn. App. 845, 855, 14 P.3d 841 (2000).

[17] Lessley, 118 Wn.2d at 778.

[18] State v. King, 113 Wn. App. 243, 295, 54 P.3d 1218 (2002).

[19] See State v. Wilson, 136 Wn. App. 596, 615, 150 P.3d 144 (2007) (where defendant had time to complete the assault and form a new intent to threaten the victim, assault and felony harassment had different objective intents).

crime. Because Gomez-Ramirez fails to meet his burden to show that the result of sentencing probably would have been different had counsel argued for a finding of same criminal conduct, the claim of ineffective assistance of counsel fails.

We affirm the judgment and sentence.

Leach, C.J.

WE CONCUR:

Becker, J.