202 P.3d 367 (2009)
In re the MARRIAGE OF Pearley D. CHUA, Respondent, and
Wayne Elwyn ROOT, Appellant.
No. 26842-0-III.
Court of Appeals of Washington, Division 3.
March 3, 2009.
*368 Wayne E. Root, Spokane, WA, pro se.
Gloria F. Porter, Attorney at Law, Spokane, WA, for Respondent.

OPINION PUBLISHED IN PART
KULIK, J.
¶ 1 Pearley Chua and Wayne Root are the divorced parents of two children, Gabriel and Abbygale. After Ms. Chua remarried, she filed a notice of intended relocation of the children. Mr. Root filed an objection. The court allowed the relocation, entered a permanent restraining order, and placed restrictions on the parenting plan. On appeal, Mr. Root challenges the restraining order and the restrictions on the parenting plan. We affirm in part, reverse in part, and remand for entry of findings of fact related to the allocation of travel expenses.

FACTS
¶ 1 Pearley Chua and Wayne Root have two children, Gabriel and Abbygale. Since the dissolution of their marriage, the children have been primarily placed with Ms. Chua pursuant to the final parenting plan entered in May 2006.
¶ 3 One year after the final parenting plan was entered, Ms. Chua requested a sexual assault protection order for her daughter against Mr. Root. A court commissioner pro tem denied the request.
¶ 4 In April 2007, Ms. Chua filed a notice of intended relocation of the children and requested authorization to relocate her children to Florida. She attached to the notice a letter to Mr. Root explaining that Ms. Chua's husband, a member of the United States Air Force, was being transferred to MacDill Air Force Base in Tampa, Florida.
¶ 5 In May, Mr. Root filed his objection to the relocation. He alleged that Ms. Chua lied about prior allegations as to his behavior with the children. By raising these allegations and denying the claims, Mr. Root opened the door for Ms. Chua to argue his history with the children.
¶ 6 The matter was heard before a court commissioner. The commissioner granted temporary relocation and unsupervised visits between Mr. Root and the children. A guardian ad litem (GAL) was appointed and a psycho-sexual evaluation of Mr. Root was ordered.
¶ 7 The commissioner considered the same evidence that was later considered by the trial court. That evidence included the following incidents. On February 23, 2007, Abbygale made a disclosure in the emergency room at Deaconess Medical Center which prompted a referral for an evaluation of a sexual assault. Mr. Root was the alleged perpetrator. In June, Stacey Arquette, a Child Protection Services social worker, filed a declaration that Gabriel made a report against his father at school. Ms. Arquette's declaration referenced three more complaints by other children. Pamela Smith filed a declaration indicating that she had obtained a one-year protection order protecting her daughter, A.S., from Mr. Root.
¶ 8 In July, Detective Jan Pogachar of the Spokane Police Department, filed a declaration stating the allegations of an eight-year-old child that were made against Mr. Root. The detective's declaration also contained other referrals against Mr. Root. Bud J. O'Connor filed a declaration referencing a restraining order he obtained to protect his 12-year-old daughter from Mr. Root. Attached to the declaration was a note written by Mr. Root to a 12-year-old girl.
¶ 9 On September 11, the court entered an order allowing Ms. Chua to relocate to Florida with her children. In December, the GAL filed her report recommending that the children be allowed to relocate on a permanent *369 basis and that Mr. Root have only supervised visitation.
¶ 10 The trial was held on January 15, 2008. On the morning of trial, Mr. Root's counsel, Matthew Dudley, moved the trial court for an order allowing him to be released from representation. Mr. Dudley based his request on ethical considerations. Mr. Root did not object. Mr. Root also made it clear that he did not want a continuance and that he wanted to proceed.
¶ 11 Mr. Root testified at trial. He admitted writing the note to the 12-year-old girl. The GAL testified that she interviewed numerous persons who had made allegations against Mr. Root. One allegation involved a girl who reported that Mr. Root drove up to her in a van, asked her if she wanted a ride, pulled her into the van when she declined, locked the door, and molested her. The GAL testified that relocation to Florida was in the best interest of the couple's children.
¶ 12 The trial court found that Ms. Chua had met all of the statutory criteria and approved the relocation of the children. The court found that Mr. Root had shown a pattern of a lack of understanding of appropriate boundaries when communicating with minor females and that he used bad judgments in some of his communications. The court also found that Mr. Root used the telephone to put the children in the middle of disputes between Ms. Chua and Mr. Root.
¶ 13 The court entered a permanent restraining order preventing Mr. Root from having contact with the children except for supervised telephone calls and two supervised visits per year. The court ordered that the costs of the supervised visitations were to be split 50/50. All lodging, transportation, and other expenses incurred by Mr. Root when exercising his visitation rights were to be paid by Mr. Root. Mr. Root was allowed supervised telephone contact under the auspices of Ms. Chua. Additionally, the court allowed Ms. Chua to obtain passports for the children without Mr. Root's knowledge and to take the children out of the country without Mr. Root's permission.
¶ 14 The court placed restrictions on the parenting plan that were related to relocation. In the parenting plan, the court found that good cause existed to "suspend the duty of the mother under RCW 26.09.430-480 regarding further relocations of the children as the mother is married to a person in the U.S. Armed Forces." Clerk's Papers (CP) at 44.
¶ 15 Mr. Root appeals, challenging the permanent restraining order and the restrictions on the parenting plan.

ANALYSIS
¶ 16 A trial court's decision regarding the modification of a parenting plan will not be reversed absent an abuse of discretion. In re Marriage of Hansen, 81 Wash. App. 494, 498, 914 P.2d 799 (1996). The trial court's review of a matter concerning the rights of custody and visitation will not be disturbed absent an abuse of discretion. In re Marriage of Luckey, 73 Wash.App. 201, 208, 868 P.2d 189 (1994). Discretion is abused if the court's decision is manifestly unreasonable or based on untenable grounds or untenable reasons. In re Marriage of Littlefield, 133 Wash.2d 39, 46-47, 940 P.2d 1362 (1997). In addition, the reviewing court must determine if the findings of fact are supported by substantial evidence and whether the court made an error of law. Brandli v. Talley, 98 Wash.App. 521, 523, 991 P.2d 94 (1999). Issues of law are reviewed de novo. Hanson v. City of Snohomish, 121 Wash.2d 552, 556, 852 P.2d 295 (1993).
¶ 17 Withdrawal of Counsel. On the morning of trial, Mr. Dudley asked to be allowed to withdraw as Mr. Root's counsel. Mr. Dudley explained that he had an ethical conflict under the Rules of Professional Conduct. Mr. Root did not object and did not ask for a continuance.
¶ 18 Under CR 71(c), an attorney who intends to withdraw must serve the notice of intent to withdraw on his or her client at least 10 days before the date on the notice. Mr. Root contends he was materially and adversely prejudiced because he did not receive 10-days' notice of his counsel's intent to withdraw.
¶ 19 While strict compliance with CR 71(c) would have required timely notice to Mr. *370 Root, we must examine whether there was prejudice to Mr. Root by allowing the withdrawal. See Lockhart v. Greive, 66 Wash. App. 735, 742, 834 P.2d 64 (1992). Here, there was no prejudice. Mr. Root was offered a continuance, and refused it because he was "ready to go." Report of Proceedings (RP) at 6.
¶ 20 Visitation Restrictions and Permanent Restraining Order. The court issued a permanent order restraining Mr. Root from going onto the grounds of Ms. Chua's school, home, or work place, and from going onto the grounds of Gabriel's and Abbygale's school or daycare. The court also entered a final parenting plan restricting Mr. Root's residential time to two supervised visits per year. We review these decisions for an abuse of discretion.
¶ 21 RCW 26.09.260(4) allows the court to reduce or restrict contact between the nonprimary residential parent and a child if such modification would serve and protect the best interests of the child. RCW 26.09.260(5) allows a court to make adjustments to any of the residential aspects of a parenting plan upon a showing of a substantial change in circumstances of either parent if the adjustment is in the best interests of the child. To support its restrictions in the parenting plan, the court found a pattern of emotional abuse of the children and abusive use of conflict. See RCW 26.09.191(1), (3)(e).
¶ 22 Here, several incidents of abuse were reported to the police. In one incident, Mr. Root was accused of taking Abbygale's friend, C., into his bedroom while Abbygale was in another room. According to police reports, Mr. Root allegedly sexually molested C. Later, police were called to the school because Abbygale "reported that her father told her to relay a message to `[C.]' that he would be coming to school that day and for [C.] not to look at him so she does not get scared." Ex. 2 at 21. A restraining order was already in place that day preventing Mr. Root from having any contact with C.
¶ 23 Another basis for placing restrictions in the parenting plan is demonstrated by the letter Mr. Root wrote to a 12-year-old girl. The note read:
Wayne Root

Keep this to yourself!! I think you are very pretty and I'd like to spend time with you! I will be working M-F. What do you do Sundays? Do [you] want to come over? I can say to clean my house or babysit. You can write me [at] 2620 E. Marshall Spokane 99207 [or] mail me a letter 534-9068 (I will pay you to clean my house)
Ex. 15.
¶ 24 In his psycho-sexual evaluation of Mr. Root, Dr. Paul Wert stated that Mr. Root appeared to have "an unusual and perhaps unhealthy interest in young females." Ex. 1 at 6. To illustrate this point, Dr. Wert stated that "it might be noted that Wayne Root's explanation as to how he sent flowers to an eleven year old female was less than credible." Ex. 1 at 6. Dr. Wert noted that Mr. Root passed a polygraph test and that while he had been investigated by the police on multiple occasions, no criminal charges had been filed.
¶ 25 Dr. Wert recommended that Mr. Root have supervised visitation with the children. The GAL recommended that the children have regular phone visitation with Mr. Root and that Mr. Root be given supervised face-to-face visitation in Florida. The GAL concluded that if Mr. Root should move to Florida, he should have daytime supervised visitation.
¶ 26 At trial, the court stated that while it did not find that there was any sexual abuse, it did find "that Mr. Root has shown a pattern of [a] lack of understanding of appropriate boundaries in communicating with minor females." RP at 98. At presentment, Mr. Root admitted that he should not have written the notes. The court also found that the children were put in the middle of a difficult situation and that telephone contact had been used to pull the children into disputes between the parents.
¶ 27 Based on the record here, the court did not abuse its discretion by issuing the permanent restraining order or placing restrictions in the parenting plan.
¶ 28 Waiver of RCW 26.09.430-.480 for Military Transfers. Mr. Root contends *371 the court erred by granting Ms. Chua a waiver of notice for any intended relocations resulting from a military transfer.
¶ 29 In section 3.6 of the parenting plan, the court stated:
[S]uspend the duty of the mother under RCW 26.09.430-480 regarding further relocations of the children as the mother is married to a person in the U.S. Armed Forces and because the court finds that this military family could be relocated several times before the children reach the age of majority and such relocation would not substantially affect the father's limited contact. However, the mother shall notify the father of a relocation of the children, involving a permanent change of station, within thirty days of the move, and the relocation must be based upon a military transfer of the family; otherwise, the mother must adhere to RCW 26.09.430-480.

CP at 44 (emphasis added).
¶ 30 In section 3.7 of the parenting plan, the court stated that RCW 26.09.430-.480:
Does not apply if family is relocating pursuant to a military transfer, permanent change of station, including a final transfer upon retirement or termination of military service. All other relocations must be pursuant to relocation statute [RCW] 26.09.430-480.

CP at 45 (emphasis added). In short, the court granted Ms. Chua a waiver of the notice provisions contained in RCW 26.09.430-.480 for any military transfer.
¶ 31 Under RCW 26.09.430, a person who intends to relocate a child must give notice to every person entitled to residential time or visitation except as provided in RCW 26.09.460. Under RCW 26.09.460(1), notice may be delayed for 21 days if the person seeking relocation is entering a domestic violence shelter. Under RCW 26.09.430(3), notice may be delayed for 21 days if the person intending to relocate the child is relocating to avoid a "clear, immediate, and unreasonable risk to the health or safety of a person or the child." RCW 26.09.430(4) allows a person seeking relocation of a child to request an ex parte hearing to have all or part of the notice requirement waived based on a finding that the "health or safety of a person or a child would be unreasonably put at risk by notice or the disclosure of certain information in the notice." Ms. Chua does not have to meet the waiver requirements contained in RCW 26.09.460.
¶ 32 Under RCW 26.09.470(2)(c), a waiver of notice must be considered when evaluating a failure to give notice. However, except for the specific circumstances set forth in RCW 26.09.460, the only other mechanism to obtain a waiver is found in RCW 26.09.510(2), which deals with temporary orders.
¶ 33 Under RCW 26.09.510(2), if a parent does not give proper notice in advance of the move, the court may grant a temporary order allowing the relocation of the child pending the final hearing, if the court (1) finds the circumstances require the issuance of the temporary order in the absence of proper notice; (2) issues an order revising residential time with the child; and (3) after examining the evidence presented at a contested hearing for temporary orders, the court finds there is a substantial likelihood that the court will approve the relocation at the final hearing. In Bay v. Jensen, 147 Wash.App. 641, 652-53, 196 P.3d 753 (2008), Division Two of this court determined that the trial court failed to meet the requirements of RCW 26.09.510(2) where one party did not meet the notice requirements and the court did not meet the requirements for granting a temporary order.
¶ 34 Reading RCW 26.09.470 and .510(2) together, there is no statutory authority for the trial court's decision to grant Ms. Chua a blanket waiver of RCW 26.09.430-.480 thereby negating the case-by-case analysis required under RCW 26.09.460 and RCW 26.09.510.
¶ 35 Ms. Chua points out that RCW 26.09.490 states that: "Unless waived by court order, after June 8, 2000, every court order shall include a clear restatement of the provisions in RCW 26.09.430 through 26.09.480." These provisions allow the court to waive the inclusion of a restatement of several statutes, but this waiver of the restatement does not imply that the courts *372 have the authority to waive the application of these statutes.
¶ 36 Ms. Chua argues that the waiver is proper because it applies only to military transfers. There is no support for this position.
¶ 37 The court erred by granting Ms. Chua a waiver of RCW 26.09.430-.480 for military transfers.
¶ 38 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with RCW 2.06.040, the rules governing unpublished opinions.
WE CONCUR: SCHULTHEIS, C.J., and KORSMO, J.