IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 33717-1-III |
| | ) | |
| WALTER N. CLARK III, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| TIFFANY A. CLARK, | ) | |
| | ) | |
| Appellant. | ) | |

PENNELL, J. — Tiffany Clark (n/k/a Tiffany Zaphia) appeals the trial court's

parenting plan modification reducing residential time with her son W.C. and designating

W.C.'s father, Walter Clark, as the primary residential parent. Tiffany argues the trial

court erred because substantial evidence showed Walter's care was detrimental to W.C.

and the court violated several of her constitutional rights. Because the trial court did not

abuse its discretion in modifying the parenting plan and because Tiffany failed to

sufficiently argue her constitutional claims, we affirm the modification and deny her

requests for expenses and sanctions.

## FACTS[1]

Walter and Tiffany[2] married in 2005. Walter filed for dissolution of the marriage in April 2012 and requested full custody of the couple's five-year-old son, W.C. In September 2012, the court entered a temporary parenting plan naming both parents as joint custodians and Tiffany the primary residential parent. The court also ordered a guardian ad litem (GAL) appointed to "further investigate both [parents'] concerns" over parenting issues. Clerks Papers (CP) at 12. While the temporary parenting plan was in place, W.C. was diagnosed with and successfully treated for kidney cancer. He has had no issues with cancer throughout the events described below.

In October 2013, the court entered a decree of dissolution and a final parenting plan, increasing the amount of time W.C. spent with Walter, resulting in near equal residential time between Walter and Tiffany. The final parenting plan also noted Tiffany suffered from an untreatable delusional disorder that could be a precursor to schizophrenia; to ensure this disorder did not affect Tiffany's ability to parent, the court required her to have annual evaluations and to provide Walter with a summary of them.

---

[1] Neither party recites any facts in the briefing. These facts are recited as best as possible from the limited record available.

[2] The parties' first names are used for clarity and readability. No disrespect is intended by doing so.

The court also ordered Walter to pay child support.

In June 2014, Tiffany moved for an order finding Walter in contempt. Tiffany's motion was premised on allegations of Walter not paying child support, not complying with the parenting plan, and willfully neglecting W.C. In part, Tiffany alleged that when W.C. was with Walter, W.C. had to live in a tent and was forced to bathe outside in cold water, his allergies to pets went uncontrolled, and W.C. was not appropriately dressed for weather conditions. Tiffany subsequently filed a petition for modification in July 2014, claiming W.C.'s current environment was "detrimental to [his] physical, mental or emotional health." CP at 64. The same alleged facts supporting Tiffany's motion for contempt supported her petition for modification. Walter generally denied the allegations.

At the hearing, the court found Walter in contempt for failing to pay child support. While the court found Walter had been complying with the parenting plan, it did restrict W.C.'s overnight visits with Walter because Walter's living situation exacerbated W.C.'s allergies. Walter was living in an army tent while his trailer was under construction; the tent's inhabitants had access to a bathroom with running water and a kitchen, they slept on beds, the floor was insulated, and the tent had power. However, the court allowed Walter to have overnight visits with W.C. if a suitable residence was used. The court

refused to address modification of the parenting plan until Walter had proper notice.

In May 2015, Tiffany again filed a petition to modify the parenting plan, alleging Walter refused to perform parenting functions and emotionally abused W.C. Walter denied the allegations and claimed Tiffany's actions were creating a detrimental environment for W.C. Noting W.C. continued to have allergies and displayed behavioral issues at school, the court reappointed the GAL. Specifically, the court wanted the GAL to investigate and recommend which household was more suitable for primary placement in light of W.C.'s need for a structured environment with clear boundaries due to his attention deficit hyperactivity disorder (ADHD) and oppositional defiance disorder.

The GAL recommended primary placement be with Tiffany. He qualified this conclusion as "a difficult recommendation" because Tiffany (1) had not been getting annual mental health evaluations as required in the parenting plan, (2) had inappropriately shown W.C. court papers, (3) may have made false allegations as to sexual behavior by Walter's current wife, (4) created issues with recent exchanges, and (5) did not take responsibility for W.C.'s failure to complete homework. CP at 144. However, because Walter was still living in a tent and also failed to take responsibility for W.C.'s homework, the GAL thought Tiffany could provide a more stable environment.

No. 33717-1-III
*In re Marriage of Clark*

The court found modification of the parenting plan was in W.C.'s best interests as his current environment was detrimental to his physical and emotional health. Noting the current situation was failing, the court granted primary placement to Walter. The court found:

> [W.C.] has been diagnosed to have ADHD and oppositional defiance disorder. His behavior at school is disruptive and he has endangered other students and adults. The mother is unwilling to use pharmaceutical medications, instead has treated his ADHD with fish oil, which has been ineffective. The child only returned one homework assignment during the entire school year. He is performing below standard in reading and writing even though he has an above average IQ [intelligent quotient]. The mother is unwilling to acknowledge that the child even has a problem with his homework. The child has been suspended from school for behavioral issues.

CP at 168. While the court had concerns about Walter's living situation, it found Walter could provide consistency to W.C. and W.C. would spend most nights with his paternal grandmother—one of W.C.'s stability factors—until Walter's home was completed. Tiffany appeals.

## ANALYSIS

*Modification of Parenting Plan*

Tiffany contends the trial court abused its discretion by modifying the parenting plan in favor of W.C.'s father. Because changes in residence are highly disruptive to

children, this court employs a strong presumption against modification of a parenting plan. *In re Marriage of Stern*, 57 Wn. App. 707, 712, 789 P.2d 807 (1990). Courts must follow the statutorily prescribed procedures before modifying a parenting plan. *See id.* at 711. In relevant part, a trial court can modify a parenting plan under RCW 26.09.260 if (1) there is a substantial change in the circumstances of the child or the nonmoving party, (2) the present environment is detrimental to the child's well-being, (3) the harm caused by the parenting plan is outweighed by the advantage of a change in the plan, and (4) the child's best interests will be served by modification. RCW 26.09.260(1), (2)(c). In the context of joint custody, the inquiry under RCW 26.09.260 is in part whether there has been a change in the circumstance of the "*joint custodians* as established by the decree." *In re Marriage of Murphy*, 48 Wn. App. 196, 198-99, 737 P.2d 1319 (1987).

We uphold a trial court's findings of fact in a modification proceeding if supported by substantial evidence, defined as a quantum of evidence sufficient to persuade a rational fair-minded person the premise is true. *In re Marriage of Chua*, 149 Wn. App. 147, 154, 202 P.3d 367 (2009); *In re Marriage of Akon*, 160 Wn. App. 48, 57, 248 P.3d 94 (2011). We will not reverse a trial court's decision to modify a parenting plan under RCW 26.09.260 unless the trial court exercised its discretion in an untenable or manifestly unreasonable way. *In re Marriage of Zigler*, 154 Wn. App. 803, 808, 226 P.3d 202

6

(2010). We defer to the fact finder on issues of conflicting testimony, witness credibility, and the persuasiveness of the evidence. *In re Parentage of J.H.*, 112 Wn. App. 486, 493 n.1, 49 P.3d 154 (2002).

Tiffany seemingly contends (1) W.C.'s environment when with *her* was not detrimental, (2) there is no evidence that harm from the residential schedule change was outweighed by advantage to W.C., and (3) modification was not in W.C.'s best interests. In a joint custody situation, "a finding of detriment to the child in his or her present environment need not be based upon the parenting of either party, but may arise from a change in the joint custodial environment." *Stern*, 57 Wn. App. at 715. As such, in the context of modification of a parenting plan that provides for shared residential placement, the changed circumstances alone can justify a trial court's conclusion that the present environment is detrimental to a child's well-being. Based on changed circumstances in the joint custodial environment, Tiffany herself petitioned for modification. She alleged the environment provided by Walter was emotionally and physically detrimental to W.C. However, it was the decaying relationship between the parties that created a detrimental environment for W.C. Tiffany showed W.C. the court file and discussed the case with him. She created issues at exchanges. Tiffany failed to effectively treat W.C.'s ADHD. Neither Tiffany nor Walter took responsibility for W.C.'s homework, but Tiffany blamed

the school. The friction in Tiffany and Walter's relationship manifested itself in W.C.'s behavioral problems and academic progress.

To show Walter's care was detrimental to W.C., Tiffany points to the exacerbation of W.C.'s allergies, her allegations of willful neglect, and her allegations that Walter emotionally manipulated W.C. However, Tiffany is merely rearguing facts—some of which the GAL disputed and some of which the court found not credible—and introduces facts not in the record. To the extent Tiffany argues the court improperly based its modification on her mental health, the court's findings do not support that contention as they are devoid of any mention of her mental health condition affecting her ability to parent. Tiffany does not challenge any of the court's findings of fact, which are supported by substantial evidence.

As noted by the trial court, W.C.'s current situation was failing and something needed to change. While the court did not agree with the GAL's recommendation, judges in a bench trial "understand that the GAL presents one source of information among many, that credibility is the province of the judge, and can without difficulty separate and differentiate the evidence they hear." *In re Guardianship of Stamm*, 121 Wn. App. 830, 841, 91 P.3d 126 (2004). The court thought Walter would be a better choice for primary residential placement. While Walter's living situation was not ideal, Walter told the court

8

he could provide W.C. with consistency. The court believed Walter. The court also thought placing W.C. with Walter and allowing W.C. to temporarily spend the nights with his paternal grandmother would provide W.C. with stability as W.C. told the GAL he liked the normalcy of his grandmother's home and wanted to spend more time there. It was the court's hope that primary residential placement with Walter—where W.C. would be surrounded by stability factors—would help W.C. succeed in school both academically and socially. It is clear this in turn supports the trial court's determination that modification was in W.C.'s best interests. The trial court did not abuse its discretion in modifying the parenting plan.

*Constitutional Claims*

Tiffany next contends the trial court violated her due process rights by (1) not conducting a full testimonial hearing on the merits, (2) failing to properly docket hearings, (3) not creating verbatim reports of proceeding or correct clerk's minutes, and (4) denying her a contempt filing. Tiffany also argues the trial court violated her right to care for her child, her freedom of movement, and her freedom against social stigma.

We decline to review Tiffany's constitutional claims for two reasons. First, Tiffany's analysis on all the issues is scant, and she cites to no case law addressing any of

her claims.[3] RAP 10.3(a)(6) directs each party to supply, in their brief, "argument in support of the issues presented for review, together with citations to legal authority and references to relevant parts of the record." This court does not consider conclusory arguments unsupported by citation to authority. *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 629, 285 P.3d 187 (2012). "'[P]assing treatment of an issue or lack of reasoned argument is insufficient to merit judicial consideration.'" *West v. Thurston County*, 168 Wn. App. 162, 187, 275 P.3d 1200 (2012) (quoting *Holland v. City of Tacoma*, 90 Wn. App. 533, 538, 954 P.2d 290 (1998)).

Second, should we look past the deficiencies in Tiffany's briefing, it does not appear Tiffany objected in the trial court on these constitutional grounds. Her failure to

---

[3] Tiffany cites to *In re Marriage of Rideout*, 150 Wn.2d 337, 77 P.3d 1174 (2003), for her contention that her due process rights were violated by not conducting a full hearing on the merits. *Rideout* determined the standard of review for a contempt hearing and discussed when a parent could be held in contempt under RCW 26.09.160. Tiffany cites to *In re Marriage of Mansour*, 126 Wn. App. 1, 106 P.3d 768 (2004), for her contention that she was held responsible for the effects of her mental illness on W.C. *Mansour* involved statutorily-required limitations in a parenting plan for a parent who abused their child. Tiffany next cites to *In re Marriage of Eklund*, 143 Wn. App. 207, 177 P.3d 189 (2008), for her contention that the court based its rulings on hearsay and libel. *Eklund* involved a contempt proceeding where the trial court consolidated separate violations of a parenting plan into a single finding of contempt and declined to order statutorily-required remedies. Lastly, Tiffany cites to Title 4 RCW for her procedural due process argument. While Title 4 does discuss civil procedure, Tiffany only makes a general conclusory argument.

object precludes her ability to raise the issue now on appeal unless she can demonstrate there was a manifest constitutional error. RAP 2.5(a)(3); *State v. O'Hara*, 167 Wn.2d 91, 97-99, 217 P.3d 756 (2009). Tiffany bears the burden of proving (1) a manifest constitutional error actually occurred and (2) the error resulted in actual prejudice. RAP 2.5(a)(3); *O'Hara*, 167 Wn.2d at 98. To demonstrate actual prejudice, Tiffany must plausibly show the asserted error had practicable and identifiable consequences in the trial. *O'Hara*, 167 Wn.2d at 99. "In determining whether the error was identifiable, the trial record must be sufficient to determine the merits of the claim. 'If the facts necessary to adjudicate the claimed error are not in the record, no actual prejudice is shown and the error is not manifest.'" *Id.* (quoting *State v. McFarland*, 127 Wn.2d 322, 333, 899 P.2d 1251 (1995)). Tiffany has failed to meet her burden of proof. No facts from the trial court record show the court violated her procedural due process rights, did not allow her to testify at the modification hearing, held her mental illness against her, or denied her the right to raise her child. The error she asserts is not manifest. We decline to review.

*Appellate Expenses and Sanctions*

Tiffany requests appellate expenses under RAP 18.1. She included one sentence requesting expenses, without citing any authority for her request, and thus did not comply with the mandatory requirements of RAP 18.1(b). *See Stiles v. Kearney*, 168 Wn. App.

No. 33717-1-III
*In re Marriage of Clark*

250, 267, 277 P.3d 9 (2012) (RAP 18.1(b) requires more than a bald request for attorney fees). Moreover, she does not prevail on appeal.

Tiffany also appears to request this court sanction Walter for a misuse of the appellate rules under RAP 18.9. She asserts Walter misused the rules when he filed his response brief late, thus increasing the length of time before her appeal was heard. Because Tiffany requested an extension for filing her opening brief, Walter's late filing of his brief did not prejudice her, and the clerk's office chose not to impose sanctions when he filed his brief one day late. We deny her request for sanctions.

Based on the foregoing, we affirm the trial court's order modifying the parenting plan.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, J.

WE CONCUR:

_____       _____
Korsmo, J.                              Siddoway, J.

12