IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Marriage of:<br><br>JENNIFER CORINNE ANDERSON,<br><br>        Respondent,<br><br>and<br><br>LOREN HEATH ANDERSON,<br><br>        Appellant. | No. 82947-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

DÍAZ, J. — Loren Anderson appeals the trial court's orders (1) modifying the parenting plan for the child he shares with Jennifer Emery (formerly Jennifer Anderson), (2) increasing Anderson's monthly child support obligation, (3) directing Anderson to stay away from Emery and the parties' child except as allowed by the parenting plan, and (4) reallocating an attorney fee award. Anderson fails to show that the trial court committed reversible legal error or otherwise abused its discretion in entering these orders. Therefore, we affirm.

## I. FACTS

Anderson and Emery are formerly married and share a daughter, G.A., who was born in 2015. In 2018, after a five-day trial, the superior court entered a parenting plan, pursuant to which G.A. resided with Emery except every other weekend, when G.A. resided with Anderson. The 2018 parenting plan included a finding that Anderson "engages in emotionally abusive behavior/abusive use of conflict."

Citations and pin cites are based on the Westlaw online version of the cited material.

In December 2019, Emery petitioned to modify the parenting plan. She alleged among other things that Anderson indicated he might lose his housing and that G.A. had reported that during a recent weekend with Anderson, she and Anderson slept on the floor of Anderson's restaurant. Emery alleged that Anderson refused to confirm his living situation when Emery asked him about it. Emery also alleged that Anderson "continues to emotionally abuse our daughter," including by telling G.A. "that 'Mommy broke our family', 'Mommy stole all my money', and 'Mommy stole you from me' " and by "demanding love and attention from [G.A.] rather than engaging appropriately." Emery requested that Anderson's time with G.A. be reduced to supervised visitation every other Saturday morning, and that the court enter a restraining order protecting Emery and G.A. from Anderson.

In January 2020, a commissioner found adequate cause to proceed to a modification trial and ordered Family Court Services (FCS) to investigate and provide a report "for a parenting plan in [the] best interests of the child." The commissioner also entered a temporary order directing the parties to follow the 2018 parenting plan with certain exceptions, including that Anderson's time with G.A. was reduced to unsupervised visitation every other Saturday and Sunday morning.

In February 2020, Anderson requested "temporary attorney fees" pursuant to RCW 26.09.140[1] so that he could retain an attorney for the modification

---

[1] RCW 26.09.140 provides, "The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding

proceeding. A commissioner granted the motion and directed Emery to pay $5,000 to Anderson's attorney "subject to reallocation . . . if [the] court determines there is no legitimate need."

In June 2020, Emery gave notice of her intent to relocate with G.A. from Snoqualmie to Vancouver, Washington.

In August 2020, Emery petitioned for a restraining order, alleging that G.A. had disclosed that (1) Anderson "said he was going to kill [Emery]" and (2) Anderson had made G.A. "say over and over that she was going to kill herself." We refer hereinafter to these disclosures as the "Disclosures." A commissioner granted Emery's petition and entered a temporary restraining order that changed Anderson's visitation with G.A. from unsupervised to supervised.

Also in August 2020, the trial court entered a temporary order allowing Emery to relocate to Vancouver. The trial court also entered a temporary parenting plan under which Anderson's visitation with G.A. remained limited to supervised visitation every other Saturday and Sunday, in Vancouver, plus "Zoom video call visitation on the Saturday when he does not have in person visitation."

Sometime in fall of 2020, Anderson also relocated to Vancouver.

In November 2020, FCS evaluator, Jennifer Bercot, filed a parenting evaluation report, which was later admitted at trial over Anderson's objection. Bercot's report included a summary of her interview with G.A.'s

---

under . . . chapter [26 RCW] and for reasonable attorneys' fees . . . in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment."

therapist. According to Bercot's report, the therapist stated she made a referral to Child Protective Services in August 2020 after G.A. made the Disclosures.

A modification trial ultimately took place in May 2021. The following witnesses testified: Emery, Anderson, Bercot, a representative from the company that provided supervision services for Anderson's visitation, and a friend of Anderson's. Emery attempted during trial to testify that G.A. made the Disclosures; however, the trial court sustained Anderson's hearsay objections to Emery's testimony.

At the close of trial, the trial court found Emery's testimony "very credible," particularly because it was "not impeached" and was "consistent with all of the other evidence," and substantially granted her requests for relief. The court entered findings of fact and conclusions of law and (1) modified the parenting plan so that Anderson's time with G.A. was limited to supervised visitation every other Saturday and Sunday from 9:00 a.m. to 1:30 p.m.; (2) entered a five-year restraining order directing Anderson to stay away from Emery and G.A. except as allowed under the parenting plan; (3) increased Anderson's monthly child support obligation from $540.32 to $792.48; and (4) reallocated the $5,000 in temporary attorney fees, directing Anderson to repay Emery.

In its oral ruling granting the restraining order, the trial court relied in part on the Disclosures as described by G.A. to her therapist. The trial court observed that according to Bercot's report, G.A. made the Disclosures to her therapist directly, and then the therapist relayed the Disclosures to Bercot, who memorialized them in her report. The trial court further found Anderson's testimony "largely not

credible," as it was "inconsistent with itself, it was inconsistent with the other evidence, and it was inconsistent with prior statements that he had made under oath." The trial court considered such inconsistencies, as well as other facts described below, in deciding "whether or not a restraining order should be issued in this case because the mother has to be able to rely on the father's statements to maintain her safety and the child's safety."

Anderson appeals.

## II. ANALYSIS

Anderson contends the trial court erred by modifying the parenting plan, entering the restraining order, increasing his child support obligations, and reallocating the temporary attorney fees.[2]  We disagree.

A.    Standard of Review

A trial court's rulings concerning parenting plans and child support are reviewed for abuse of discretion.  In re Marriage of Christel, 101 Wn. App. 13, 20-21, 1 P.3d 600 (2000) (parenting plan); In re Marriage of Fiorito, 112 Wn. App. 657, 663, 50 P.3d 298 (2002) (child support).  So, too, are a trial court's decisions to grant a restraining order and in fashioning the order.  In re Marriage of Chua, 149

---

[2] In the introduction section of his opening brief, Anderson states that he "also appeals the trial court's denial of his Motion for Reconsideration."   But Anderson did not assign error to the trial court's decision to deny reconsideration and did not provide argument or citations to authority with regard to that decision. Therefore, we do not consider whether the trial court erred in denying reconsideration.  See Escude ex rel. Escude v. King County Pub. Hosp. Dist. No. 2, 117 Wn. App. 183, 190 n.4, 69 P.3d 895 (2003) ("It is well settled that a party's failure to assign error to or provide argument and citation to authority in support of an assignment of error, as required under RAP 10.3, precludes appellate consideration of an alleged error.").

Wn. App. 147, 154, 202 P.3d 367 (2009); see also 20 SCOTT J. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 41:3, at 634-35 (2d ed. 2015) (dissolution courts have "broad equitable powers" to fashion remedies, including restraining orders, over and above the available statutory remedies). And, a trial court's decision regarding a party's entitlement to attorney fees under RCW 26.09.140 is also reviewed for abuse of discretion. In re Marriage of Nelson, 62 Wn. App. 515, 521, 814 P.2d 1208 (1991).

" 'A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons.' " In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (quoting In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997)). A trial court necessarily abuses its discretion when it bases its ruling on an error of law. Sales v. Weyerhaeuser Co., 163 Wn.2d 14, 19, 177 P.3d 1122 (2008). As further discussed below, Anderson fails to show that the trial court committed a reversible abuse of discretion with regard to any of the orders challenged in this appeal.

B.    Parenting Plan Modification

RCW 26.09.260 sets forth the procedures and criteria for modifying a parenting plan, and these procedures and criteria "limit a court's range of discretion." In re Custody of Halls, 126 Wn. App. 599, 606, 109 P.3d 15 (2005). Anderson first argues that the trial court abused its discretion because, instead of applying the criteria set forth in RCW 26.09.260 for *modifying* a parenting plan, "it applied the criteria under RCW 26.09.187 for *establishing* a . . . parenting plan."[3]

---

[3] Emphasis added.

6

But although the trial court referred to the RCW 26.09.187(3)[4] factors in its oral ruling, the trial court's order on modification, expressly resolves Emery's modification petition under the standards set forth in RCW 26.09.260. Cf. Shellenbarger v. Brigman, 101 Wn. App. 339, 346, 3 P.3d 211 (2000) (trial court's written order "controls over any apparent inconsistency with the court's earlier oral ruling"). Moreover, Anderson does not explain how the trial court's application of the RCW 26.09.187 factors amounts to an error under RCW 26.09.260. Anderson's argument fails.

Anderson next acknowledges that the court can modify a parenting plan based on RCW 26.09.191 if it finds that a parent's involvement has an adverse effect on a child's best interests. See RCW 26.09.260(4) (a court may "reduce or restrict contact between the child and the parent with whom the child does not reside a majority of the time if it finds that the reduction or restriction would serve and protect the best interests of the child using the criteria in RCW 26.09.191"). Anderson asserts, however, that substantial evidence does not support such a finding because "[t]he *only* evidence on which the trial court relied in ordering a modification of the parenting plan" was inadmissible hearsay consisting of (1) G.A.'s report that she slept on the floor of Anderson's restaurant and (2) the Disclosures. (Emphasis added.) That is inaccurate.

Anderson mischaracterizes the basis for the trial court's determination that restrictions in the parenting plan were appropriate. The trial court's findings and

---

[4] RCW 26.09.187(3) sets forth factors the court "shall consider" in making a residential schedule "[w]here the limitations of RCW 26.09.191 are not dispositive of the child's residential schedule."

conclusions expressly state that the reasons for placing restrictions on Anderson "are listed in the new Parenting Plan."[5] The parenting plan in turn provides, "Visitation with [Anderson] shall be limited" based on a finding that Anderson "engages in emotional abuse and abusive use of conflict," a problem that "may harm the child's best interests." Anderson's failure to address this clear finding is fatal for at least three reasons.

First, Anderson does not assign error to the trial court's finding that he engages in emotional abuse and abusive use of conflict; thus, it is a verity on appeal. See In re Marriage of Knight, 75 Wn. App. 721, 732, 880 P.2d 71 (1994) (unchallenged findings are verities on appeal). Second, by choosing to ignore the actual basis of the trial court's decision, Anderson cannot establish that this finding was insufficient to support the restrictions on his time with G.A. Cf. RCW 26.09.191(3)(e), (g) (providing that abusive use of conflict by a parent can be a basis to "limit any provisions of the parenting plan," as can "[s]uch other factors or conduct as the court expressly finds adverse to the best interests of the child"); In re Marriage of Katare, 175 Wn.2d 23, 36, 283 P.3d 546 (2012) ("[T]he trial court need not wait for actual harm to accrue before imposing restrictions on visitation."). Third, to the extent Anderson is (perhaps implicitly) making the argument that these findings are not sufficiently supported by the record, he has failed to articulate in any way, with citations to relevant parts of the record, why he believes that is so.[6] Instead, Anderson has put all his eggs in the hearsay basket, which

---

[5] Italics omitted.

[6] In any event, our review of the record confirms that substantial evidence, including the evidence described in the following section, supports the trial court's

ultimately was not the basis for the written order.

For these reasons, Anderson fails to establish that the trial court erred in modifying the parenting plan.

C.      Restraining Order[7]

Anderson next argues that the Disclosures constitute inadmissible hearsay and, thus, the trial court erred in relying on them when it entered the restraining order.  We need not determine whether the trial court erred in relying on the Disclosures when it granted the restraining order because even if it did, Anderson does not persuade us that the error was prejudicial.  See Brown v. Spokane County Fire Prot. Dist. No. 1, 100 Wn.2d 188, 196, 668 P.2d 571 (1983) ("[E]rror without prejudice is not grounds for reversal.").

Specifically, Anderson contends that the trial court's reliance on the

---

findings even without considering the statements Anderson contends are hearsay. Cf. Wenatchee Sportsmen Ass'n v. Chelan County, 141 Wn.2d 169, 176, 4 P.3d 123 (2000) (substantial evidence is that quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true); In re Marriage of Boisen, 87 Wn. App. 912, 918, 943 P.2d 682 (1997) (in determining whether substantial evidence supports a finding, we view the evidence in the light most favorable to the party that prevailed below).

[7] We note that although Anderson's notice of appeal was timely with regard to the trial court's "Final Order and Findings on Petition to Change a Parenting Plan, Residential Schedule, or Custody Order," in which the trial court "approved" the already-entered restraining order, Anderson's notice of appeal did not designate the restraining order itself and was not filed within 30 days after entry thereof.  But Emery does not challenge the timeliness of Anderson's appeal from the restraining order, she does not otherwise argue that the restraining order is not properly before us, the nature of Anderson's challenge to the restraining order is clear, and Emery responded fully to that challenge.  So, we reach the merits.  Cf. Kaiser Found. Health Plan, Inc. v. Brice, 22 Wn. App. 2d 227, 233 n.3, 510 P.3d 1017 (2022) (appellate court has discretion to consider issues despite technical flaws in an appellant's compliance with the Rules of Appellate Procedure so long as the issues are clearly argued and the respondent is not prejudiced).

Disclosures requires reversal because "[t]he only other actual evidence cited by the trial court in support of the restraining order is the fact that . . . Anderson also moved to Vancouver in October 2020," which he asserts "is simply him wanting to be nearer his daughter and avoid a lengthy drive every other weekend" and "cannot be the basis for a restraining order."

Here, again, Anderson's contention mischaracterizes the trial court's findings in at least two ways.

First, although the trial court did refer to Anderson's relocation in granting the restraining order, it did not rely on the mere fact that Anderson moved to Vancouver. Rather, it pointed out that Anderson *also* chose to move within a mile of Emery, stating, "[T]here's no reason that he needed to live so close to Ms. Emery and repeatedly bring that up." As the finder of fact, the trial court was entitled to draw a reasonable inference that Anderson's decision to move that close to Emery, "despite a temporary restraining order having been in place," was not made in good faith but instead was, as the trial court put it, "disconcerting" and a reasonable cause for concern on Emery's part.

Second, Anderson's move was not, as Anderson claims, the "only" evidence other than the Disclosures that the trial court cited in granting the restraining order. Nor did the Disclosures "poison[ ] the well and influence[ ] the [trial court's] entire decision" as Anderson argues in his reply brief. To the contrary, the trial court made clear in its oral ruling that it would have granted the restraining order "independent of" the Disclosures in Bercot's report based on Anderson's "potential psychological problem" and Emery's reasonable fear for her and G.A.'s safety,

stating that Anderson's inaccurate testimony and his "blaming [Emery] and others [] including his attorneys and various judicial officers for the problems that he was having" were "all indicative of somebody with" such potential problems. Consistent with these oral remarks, the trial court entered written findings that Emery's "fear of [Anderson] is reasonable both for herself and [G.A.]" and that Anderson "is exhibiting mental health issues that need to be addressed."

Anderson argues in his reply brief that substantial evidence does not support these findings absent the Disclosures, but we disagree. Again, the trial court here made unchallenged findings that Anderson had engaged in "mental abuse" and "isolation" of G.A. and had proven incapable of co-parenting with Emery, including with regard to advising Emery about G.A.'s whereabouts. Additionally, Bercot testified, separately from any discussion of the Disclosures, that Anderson presented in her interview with him as having "impaired judgment and lack of insight," and that despite the finding in the 2018 parenting plan that he engaged in emotional abuse and abusive use of conflict, that issue did not seem to have been remedied and was causing G.A. emotional distress. And Emery, whom the trial court again found credible, testified that G.A. exhibited anxious behavior during the period between January and August 2020 when her visitation with Anderson was unsupervised, and that G.A.'s anxiety was "a lot less" once visitations became supervised. Emery also testified that Anderson did not respect G.A.'s boundaries—for example, pulling G.A.'s arm away and kissing her on the lips even when she would try to block Anderson, and talking over G.A. and "steamroll[ing] right on over her" when G.A. would try to end a call with Anderson.

And, Emery testified that Anderson "enjoys conflict and drama and inserting control where he can,"; that he had previously justified not going to court-ordered counseling by saying there was nothing wrong with him and he was "just hardheaded,"; and that her fear of him was based in part on the fact that when she left her marriage, she did so in the middle of the night after Anderson threatened to "get a gun and shoot everyone until he figured out who [Emery's] boyfriend was."

Finally, and again, the trial court found Anderson not credible, pointing to the numerous inaccuracies in his testimony and other behaviors that "indicate[d] a lack of stability."

In short, substantial evidence in the record supports the trial court's findings that Anderson had mental health issues that needed addressing and that Emery's fear of him was reasonable for both herself and G.A. Anderson cites no authority to persuade us that these findings, together with Anderson's "disconcerting" move within a mile of Emery, were an untenable basis for the restraining order independent of the Disclosures. See DeHeer v. Seattle Post-Intelligencer, 60 Wn.2d 122, 126, 372 P.2d 193 (1962) ("Where no authorities are cited in support of a proposition, the court is not required to search out authorities, but may assume that counsel, after diligent search, has found none.").

D.    Child Support Increase

Anderson contends that "[a] court may only modify an order of child support if the party seeking modification can show a 'substantial change in circumstances' since the original dissolution decree," and because there was no evidence of such a substantial change, the trial court erred in increasing Anderson's child support

12

obligation.  We disagree.

Under RCW 26.09.170(1), a child support order generally may be modified "only upon a showing of a substantial change of circumstances."  However, under RCW 26.09.170(9), a substantial change of circumstances need not be shown "[i]f twenty-four months have passed from the date of the entry of the order," in which case child support may be "adjusted . . . based upon . . . [c]hanges in the income of the person required to pay support."  RCW 26.09.170(9)(a)(i); see also In re Marriage of Scanlon, 109 Wn. App. 167, 173, 34 P.3d 877 (2001) ("[P]arties may adjust an order of child support every 24 months on a change of incomes, without showing a substantial change in circumstances.").  An adjustment under RCW 26.09.170(9) is a "routine action" that "simply conforms existing provisions of a child support order to the parties' current circumstances."  Scanlon, 109 Wn. App. at 173.

Here, the record reflects that Emery requested, and the trial court granted, an adjustment under RCW 26.09.170(9) given that 24 months had passed since the original child support order was entered.  Indeed, the trial court's findings and conclusions expressly provide that the basis for the child support increase was an "[a]djustment pursuant to statute."  Anderson does not acknowledge this; he also does not argue on appeal, nor did he argue below, that an adjustment was not properly before the trial court.  Because an adjustment under RCW 26.09.170(9) does not require a showing of substantial change in circumstances, Anderson fails to establish that reversal is required based on Emery's not making that showing.

Anderson also suggests that the trial court abused its discretion inasmuch

as it increased child support based on a determination that he had net income of $6,000 per month. He asserts that the trial court based the increase on his financial declaration, where he declared that he had $9,200 in monthly revenue and $4,000 in expenses, and that from this, the court "somehow" concluded that Anderson had a net income of $6,000 per month.

But the trial court did not rely solely on Anderson's financial declaration. In its oral ruling, the trial court stated that it considered, additionally, Anderson's bank statements, tax returns, and "Exhibit 69." Anderson does not address these additional documents, and he did not designate Exhibit 69 for the record on appeal. Therefore, Anderson cannot establish that the trial court had no tenable basis, based on the totality of the evidence before it, to fix his income at $6,000. Cf. In re Marriage of Haugh, 58 Wn. App. 1, 6, 790 P.2d 1266 (1990) ("The appellant has the burden of perfecting the record so that the court has before it all the evidence relevant to the issue."); RAP 9.2(b) ("If the party seeking review intends to urge that a . . . finding of fact is not supported by the evidence, the party should include in the record all evidence relevant to the disputed . . . finding.").

E.     Attorney Fee Reallocation

As a final matter, Anderson argues that because "[t]here was no evidence that the relative resources between the parties shifted in [his] favor between February 2020 [when the temporary attorney fee order was entered] and May 2021," the trial court erred by reallocating the $5,000 in temporary attorney fees. We disagree for two reasons.

First, the temporary attorney fee order expressly stated that the fee award

could be reallocated if the court later determined that Anderson's need was not "legitimate,"; that is, reallocation did not require a change in the *relative* resources of the parties. Cf. In re Marriage of Marzetta, 129 Wn. App. 607, 626, 120 P.3d 75 (2005) (rejecting a request for attorney fees under RCW 26.09.140 where the party requesting fees "has shown no need and has the ability to pay her own attorney fees"), abrogated by In re Marriage of McCausland, 159 Wn.2d 607, 152 P.3d 1013 (2007).

Second, Anderson does not persuade us that the trial court erred in finding that his need was not legitimate. He argues that the trial court erred inasmuch as it considered "th[e] fact that he had a rental car" and his receipt of a $60,000 Small Business Administration (SBA) loan, asserting that the trial court "d[id] not explain how [his] business expenses and a [SBA] loan would justify a reallocation of money to pay for a personal attorney." But given that Anderson was self-employed, it was not unreasonable for the trial court to consider his business expenses and income in determining his need. And, the trial court did not rely on the mere fact that Anderson "had a rental car"; it pointed out that the evidence showed he was spending "more than $1,000 a month on car expenses for a rental car . . . that [] was barely used."

Anderson also takes issue with the court's observation that according to Anderson's own testimony, he was "renting a much larger apartment and much more expensive apartment than is reasonably needed for him to live." He argues that this mischaracterizes his testimony because "[h]e testified that he has a two-bedroom apartment because he uses half of it for work." But this is not what

15

Anderson testified at the record location on which he relies: He testified that he claimed half of his rent as a business expense, not that he used half of his apartment for work. Meanwhile, there is evidence elsewhere in the record that Anderson was renting a two-bedroom, two-and-a-half-bath apartment and had no roommate. And, Anderson testified that G.A. "once again has her own bedroom." This was despite the fact that at the time, Anderson had only visitation with G.A. every other Saturday and Sunday, with no overnights. The trial court was entitled to draw the inference that Anderson was spending more on an apartment than he reasonably needed to spend.

Anderson next faults the court's finding that he made "inefficient use of his attorneys," asserting that "this is a conclusory statement unsupported by any testimony." But Emery testified that by January 2021, Anderson was on his fifth new attorney. And, there is evidence in the record that Anderson's attorneys filed documents on his behalf—including declarations with his signature on them—only for Anderson to try to disavow those filings later. Furthermore, it is a verity on appeal that Anderson's "foot-dragging, incomplete discovery response and inaccurate statements was the result of significant intransigence on his part" and resulted in increased litigation costs. The record supports the trial court's determination that Anderson made inefficient use of his attorneys.

Finally, Anderson argues that "it is undisputed that [he] was struggling to meet his child support obligations." But while it may be undisputed that he was struggling, the trial court plainly rejected the proposition that his struggles were the result of legitimate financial need. And for all of the reasons already discussed,

16

Anderson fails to show that the trial court abused its discretion in rejecting that proposition and reallocating the $5,000 in temporary attorney fees to Emery.

We affirm.

_Díaz, J._

WE CONCUR:

_Coburn, J._